# EXHIBIT A

1
HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
2
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
3
San Francisco, California 94108
Telephone: (415) 433-1700
4
Facsimile: (415) 520-6593
5
MARK E. TRAMMELL*
6
mtrammell@libertycenter.org
JOSHUA WALLACE DIXON*
7
jdixon@libertycenter.org
CENTER FOR AMERICAN LIBERTY
8
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
9
Telephone: (703) 687-6212
10
Facsimile: (517) 465-9683
11
*Pro hac vice motion forthcoming
12
13
Attorneys for Plaintiffs Jessica Konen and A.G., her minor child

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 6/27/2022 2:20 PM
By: Rowena Esquerra, Deputy

14
**SUPERIOR COURT OF CALIFORINA**
15
**COUNTY OF MONTEREY**
16

17
**JESSICA KONEN and A.G., her minor child,**

18
**Plaintiffs,**

19
v.

20
**LORI CALDEIRA, in her personal capacity;**
21
**KELLY BARAKI, in her personal capacity;**
**KATELYN PAGARAN, in her personal**
22
**capacity; and SPRECKELS UNION**
**SCHOOL DISTRICT,**
23

24
**Defendants.**

Case No: 22CV001813

**COMPLAINT**

**42 U.S.C. § 1983; 42 U.S.C. § 1985(3));**
**INTENTIONAL INFLICTION OF**
**EMOTIONAL DISTRESS / GOV'T**
**CODE § 815.2; NEGLIGENCE / GOV'T**
**CODE § 815.2; NEGLIGENCE *PER SE* /**
**GOV'T CODE §§ 815.2 AND 815.6;**
**BANE ACT / GOV'T CODE § 815.2;**
**CIVIL CONSPIRACY**

**DEMAND FOR JURY TRIAL**

25
26
27
Jessica Konen and A.G., her minor child (collectively, "Plaintiffs"), through their undersigned
28
counsel, state the following claims for relief against Lori Caldeira, in her personal capacity; Kelly

1

Baraki, in her personal capacity; Katelyn Pagaran, in her personal capacity; and the Spreckels Union School District (collectively, "Defendants"):

## INTRODUCTION

1.      Ms. Konen brings this action to vindicate her fundamental right under the Fourteenth Amendment to the United States Constitution to direct the upbringing of her minor child, A.G. Defendants, teachers and administrators at A.G.'s middle school, along with the school itself, secretly convinced A.G.—who was 11 years old at the time—first, that she was bisexual and, later, that she was transgender—*i.e.*, that her gender did not correspond with her biological sex.  Despite the profound mental stress these actions inflicted on A.G., Defendants attempted to counsel A.G. themselves, without her mother's involvement, instructing A.G. that she must not tell her mother, her closest confidant, about her new supposed gender identity.

2.      At Defendants' sustained urging and direction, A.G. assumed a new gender identity, different from her biological sex, including assuming a new name associated with her new gender identity and going by new pronouns.  Defendants began referring to A.G. by her new name and pronouns, changed A.G.'s name in certain educational records, and arranged for A.G. to use the unisex bathroom at school that was otherwise reserved for teachers, all without informing or consulting with her mother, Ms. Konen.

3.      In fact, Defendants attempted to actively deceive Ms. Konen of A.G.'s new gender identity by using A.G.'s birth name and corresponding pronouns in her (Ms. Konen's) presence while using A.G.'s new name and pronouns when she (Ms. Konen) was not present, by instructing A.G. that she must not tell her mother about her new gender identity, and by otherwise concealing facts regarding A.G.'s new gender identity from Ms. Konen.

4.      Ms. Konen supports her daughter, regardless of the decisions she makes. Ms. Konen simply wants to be a part of her daughter's life and exercise her rights as a parent to direct the upbringing of her child.  Defendants denied Ms. Konen of that right during a crucial phase of A.G.'s development, choosing for themselves how to direct A.G.'s upbringing regarding the major life decision of A.G.'s gender identity, and concealing critical facts from Ms. Konen, her parent.

2

Complaint

5.      In addition to violating Ms. Konen's right to direct the upbringing of her minor child, Defendants' actions also violated Ms. Konen's and A.G.'s rights under federal and state law and inflicted serious emotional and mental harm upon them. Plaintiffs also seek vindication of these rights.

**JURISDICTION AND VENUE**

6.      Plaintiffs seek redress for injuries suffered from the deprivation, under color of state law, of rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and from violations of other federal and state laws. The Court has jurisdiction over this matter pursuant to Article VI § 10 of the California Constitution.

7.      Venue is proper in this Court pursuant to California Civil Code §§ 393-395 because the injuries alleged herein occurred in Monterey County, California.

**PARTIES**

8.      Jessica Konen is a resident of Monterey County, California.

9.      A.G. is Ms. Konen's minor child. A.G. resides with her mother in Monterey County, California.

10.     Spreckels Union School District ("Spreckels Union") is a school district under California law located in Monterey County, California. Buena Vista Middle School ("Buena Vista") is a middle school (sixth through eighth grades) located in Monterey County, California and within Spreckels Union. A.G. attended Buena Vista from the fall of 2018 to the spring of 2021 for the sixth through eighth grades.

11.     At all times relevant herein, Katelyn Pagaran was the Principal of Buena Vista, an agent, servant, and / or employee of Spreckels Union, and acting in the scope of her authority. On information and belief, based on her role as Principal of Buena Vista, Pagaran, among others, is responsible for implementing the policies, practices, customs, and procedures of Spreckels Union in effect at Buena Vista as adopted by others, for overseeing the educational environment and the performance of teachers and counselors, for the training and / or supervision of employees at Buena Vista, including, but not limited to, Defendants Lori Caldeira and Kelly Baraki, and for the acts she committed that resulted in the deprivation of Plaintiffs' rights as set forth herein.

3

Complaint

12.     At all times relevant herein, Lori Caldeira was a teacher at Buena Vista, an agent, servant, and / or employee of Spreckels Union, and acting in the scope of her authority.  Caldeira, among others, is responsible for implementing the policies, practices, customs, and procedures of Spreckels Union at Buena Vista as adopted by others and for the acts she committed that resulted in the deprivation of Plaintiffs' rights as set forth herein.

13.     At all times relevant herein, Kelly Baraki was a teacher at Buena Vista, an agent, servant, and / or employee of Spreckels Union, and acting in the scope of her authority. Baraki, among others, is responsible for implementing the policies, practices, customs, and procedures of Spreckels Union at Buena Vista as adopted by others and for the acts she committed that resulted in the deprivation of Plaintiffs' rights as set forth herein.

## STATEMENT OF FACTS

### Spreckels Union Adopts the Parental Secrecy Policy

14.     Spreckels Union adopted and implemented a policy, practice, procedure, and/or custom at Buena Vista under which teachers and staff would keep certain information about students' gender identity and expression secret from parents (the "Parental Secrecy Policy"). Under the Parental Secrecy Policy, Spreckels Union teachers and staff at Buena Vista would conceal from parents that their minor children had articulated confusion about their gender identity, evinced a desire to change their gender identity, or assumed or expressed a new gender identity, unless the student expressly authorized the parents to be informed.

15.     Despite keeping this information secret from parents, Spreckels Union and its teachers and staff at Buena Vista would enable minor children to change their gender identity and expression at school by, among other things: (a) affirming students' gender confusion and compounding the confusion by encouraging students to transition gender identities; (b) addressing students by any new names associated with their new gender identity that they wanted to be called; (c) addressing students by pronouns the students indicated they wished to be called by; (d) changing educational records to reflect the students' new name and pronouns; and (e) pushing these students to use the unisex restroom otherwise reserved for teachers.

4

Complaint

16.     In addition, Spreckels Union and its teachers and staff at Buena Vista would intentionally deceive parents regarding students' new gender identity and expression by, among other things, not publishing the Parental Secrecy Policy on the Spreckels Union website, using students' birth names and pronouns in communications with parents despite using students' new names and pronouns when parents were not there, instructing students they were not to tell their parents about their new gender identity or expression because their parents "couldn't be trusted," and otherwise concealing those facts from parents.

17.     The Parental Secrecy Policy, as described above and as adopted by Spreckels Union, authorizes minor children to make mature, consequential, and potentially life-altering decisions—such as what gender to identify as; how to express their gender identity, including, but not limited to, females binding their breasts so they look more like males; what name to be called; what pronouns to use; and what privacy facilities to use—with no notification to or input from parents.

18.     On information and belief, based on her role as Principal of Buena Vista, Pagaran was the Spreckels Union employee responsible for overseeing the implementation of the Parental Secrecy Policy at Buena Vista (although not for adopting the Parental Secrecy Policy, which would have been undertaken by the Spreckels Union Board of Trustees), for overseeing the educational environment and the performance of teachers and counselors, including, but not limited to Caldeira and Baraki, and for ensuring that teachers and staff, including but not limited to Caldeira and Baraki, were trained on the Parental Secrecy Policy.

19.     Pagaran, Caldeira, and Baraki, among others, implemented the Parental Secrecy Policy at Buena Vista.

**Caldeira and Baraki Operate the Equality Club and Hide it From Parents**

20.     Caldeira and Baraki are seventh-grade teachers at Buena Vista. In addition to teaching, Caldeira and Baraki operated the Equality Club, a school-based club for students comprised primarily of students that Caldeira and Baraki had identified as students who they believed might be receptive to ideas such as homosexuality, bisexuality, transgenderism, gender non-conformity, etc.

21.     Caldeira and Baraki identified students for the Equality Club based on comments students made to them, comments that they overheard students make to others, and their own

5

Complaint

1   observations of students in the classroom setting, and otherwise. Once they identified students for the

2   club, Caldeira and Baraki would invite them to participate. In addition, often at Caldeira's and

3   Baraki's suggestion, students already in the Equality Club would recruit other students to attend

4   Equality Club meetings.

5        22.    At Equality Club meetings, Caldeira and Baraki would, among other things, discuss

6   issues related to homosexuality, bisexuality, transgenderism, gender non-conformity, *etc.* Through

7   these discussions, Caldeira and Baraki coached students on how to express those identities. Caldeira

8   and Baraki instructed students to research a particular topic and then have follow-up discussions with

9   the student about that research.

10       23.    Sometimes, Caldeira and Baraki would introduce and push identities on students, and

11   the students resisted.

12       24.    Caldeira and Baraki took measures to keep students' participation in the Equality Club

13   and student's new gender identities secret from students' parents. Specifically, Caldeira and Baraki:

14   (1) instructed students that they should not tell their parents about their new gender identities; (2)

15   purposefully failed to keep Equality Club rosters or records so that parents could not discover their

16   children's participation in the club or new gender identities; and (3) held Equality Club meetings

17   during lunch—as opposed to after school when other student clubs meet—so that students, who were

18   too young to drive, did not have to ask their parents to pick them up so they could better hide their

19   participation in the club and their new gender identities.

20       25.    Caldeira and Baraki took these measures because they knew some children's parents

21   would not want their children to participate in a club in which homosexuality, bisexuality,

22   transgenderism, gender non-conformity, *etc.*, were being promoted or to adopt these identities.[1]

23       26.    Pagaran was aware of the Equality Club and Caldeira's and Baraki's tactics as set forth

24   above and approved of them. In fact, Pagaran frequently attended Equality Club meetings.

25

26

27   [1] Caldeira and Baraki later changed the name of the Equality Club to the UBU (or, "You Be You")
  Club. On information and belief, based on news reporting discussed in Paragraphs 57-64, Caldeira
  and Baraki changed the name of the club because parents had begun to learn about the goings on of

28   the Equality Club, and they changed its name an effort better to avoid parental knowledge.

Complaint

**Caldeira and Baraki Begin Secretly Influencing A.G. and Instructing her to Hide Information from Ms. Konen**

27.     A.G. started school at Buena Vista in the sixth grade during the 2018-2019 school year. At the time, A.G. was 11 years old.

28.     Near the beginning of A.G.'s sixth-grade year, she attended an Equality Club meeting at the invitation of a friend. Initially, A.G. was not interested in the discussion, and she decided not to come back to the club. About two weeks later, Caldeira approached A.G. and asked her to come back to the club. Caldeira told A.G. that she "fit in perfectly."  A.G. agreed to come back at Caldeira's direction, and she began attending Equality Club meetings on a regular basis.

29.     At these meetings and in other discussions, Caldeira and Baraki told A.G. that she was bisexual. That idea did not originate with A.G. In fact, she did not fully understand what that term meant.

30.     Shortly thereafter, Caldeira and Baraki told A.G. that she was transgender—*i.e.*, that her gender did not match her biological sex. As with the bisexual label the teachers applied to A.G., the idea that A.G. was instead transgender, did not originate with A.G., nor did A.G. fully understand what it meant.

31.     At the time Caldeira and Baraki labeled A.G. transgender, A.G. was pre-pubescent.

32.     By the spring of 2019, A.G. went to a Buena Vista school counselor complaining of depression and stress. A.G. began attending weekly counseling sessions with the school counselor, and, after the sessions with the counselor, Caldeira and Pagaran would often have follow-up meetings with A.G. and the school counselor regarding the same topics that were discussed in the counseling sessions. During those meetings, the counselor and Caldeira informed A.G. that the feelings she was having were because she was "not being who she was" and that if she became her "true self," her depression and stress would be better (or words to that effect).

33.     Caldeira and Baraki encouraged A.G. to change her name to a boy's name as an expression of the new identity they were encouraging her to take on.  A.G. assumed the name "S.G." and began wearing boys' clothing. At first, A.G. used the name S.G. at Equality Club and among her friends only.  Caldeira and Baraki also began referring to A.G. as S.G.

7

Complaint

22CV001813

34.     Caldeira and Baraki instructed A.G. not to tell her mother about her new gender identity or new name, saying that her mother might not be supportive of her and that she couldn't trust her mother. They instructed A.G. that she should instead talk to them if she had anything she needed to talk about. Caldeira and Baraki were teachers, and A.G. trusted their authority over her. Accordingly, she complied with this directive.

35.     On information and belief, based on Pagaran's role as Principal of Buena Vista, involvement in the Equality Club, and involvement with A.G.'s counseling, Pagaran was aware that Caldeira and Baraki gave A.G. these instructions about concealing the new identity from her mother and approved of them.

36.     Caldeira signed A.G.'s Buena Vista's 2018-2019 yearbook, writing "S.G., Stay you! Looking forward to working with you next year."

**Defendants Formally Acknowledge A.G.'s New Name/Pronouns and Attempt to Hide the Information from Ms. Konen**

37.     For A.G.'s seventh-grade year, which was the 2019-2020 school year, Caldeira and Baraki were two of her teachers.  For this reason, they had more interaction with A.G. during that year, and they were able to form a closer relationship with her.

38.     Over the summer of 2019, A.G. received correspondence from Buena Vista regarding the upcoming school year.  After receiving this correspondence, A.G. emailed Caldeira to ask her what name she should write on her school materials in light of the fact she was now going by S.G. in certain school settings.  Caldeira instructed A.G. to "write whatever your mother will approve, and we'll fix it when you get to school" or words to that effect.

39.     Caldeira also emailed A.G. a Gender Support Plan, which is a Buena Vista document designed to govern how the school will treat students who want to identify as new gender.  The Gender Support Plan contained questions regarding student preferences on such matters as their preferred name, pronouns, and restrooms, and whether students want their preferences to be made known to other teachers and administrators.

40.     Ms. Konen was not informed of the Gender Support Plan.

8

Complaint

41.     In the first week of her seventh-grade year, A.G. completed the Gender Support Plan with Caldeira and Baraki, with A.G. verbally responding to the questions on the Gender Support Plan and Caldeira writing the responses down.  On at least three occasions, Caldeira wrote responses that did not comply with A.G.'s wishes and that, instead, pushed A.G.'s new gender identity.  For example, the Gender Support Plan asked whether the student authorized administration to use the student's new name in correspondence with the student's parents. A.G. informed Caldeira that her response to that question was "Not yet."  Caldeira, however, wrote "Not ever.  Parent is not supportive" or words to that effect. In addition, the Gender Support Plan asked if the student authorized use of their new name and pronouns in the presence of other staff. A.G. informed Caldeira that her response to that question was "Maybe," but Caldeira wrote "Yes." Further, the Gender Support Plan asked if the student preferred to use different restrooms. A.G. informed Caldeira that she did not have a preference, but Caldeira wrote that she preferred to use the unisex teachers' restroom, which required the use of a key that teachers had.

42.     After A.G.'s Gender Support Plan was created, Caldeira sent an email to A.G.'s other teachers about A.G.'s new name, pronouns, and use of the unisex teachers' restroom. A.G.'s other teachers began referring to her as S.G. and using male pronouns to refer to her, and she began using the unisex teacher's restroom.

43.     On information and belief, based on Pagaran's role as Principal of Buena Vista, involvement in the Equality Club, and involvement with A.G.'s counseling, Pagaran approved of Caldeira's use of the Gender Support Plan for A.G.  In addition, after Caldeira completed the Gender Support Plan, Pagaran started referring to A.G. as S.G. as well.

44.     Ms. Konen was not informed about the Gender Support Plan or the changes in the way Buena Vista addressed and treated A.G.  Moreover, Ms. Konen received correspondence regarding A.G. from Buena Vista and had meetings with school personnel, including Caldeira, after Buena Vista changed the way it referred to and treated A.G. pursuant to the Gender Support Plan. Despite the fact Pagaran and Caldeira called A.G. by the name "S.G." and used masculine pronouns when referring to her at school, in correspondence from Buena Vista and in meetings with Ms. Konen, the school and

9

Complaint

Caldeira referred to A.G. as "A.G." and used female pronouns to refer to her in an effort to deceive her about A.G.'s new identity and expression.

45.     In one in-person meeting with Ms. Konen, Caldeira accidentally referred to A.G. as S.G.  She realized the mistake, and quickly moved on. The next day, Caldeira told A.G. that she had "messed up" in the conversation with her mother.

46.     On information and belief, based on her role as Principal of Buena Vista, involvement in the Equality Club, and involvement in A.G.'s counseling, Pagaran knew about this deception of Ms. Konen and approved of it.

47.     Early in A.G.'s seventh-grade year, during Caldeira's English class, Caldeira gave A.G. a print-out of approximately five articles on adopting a new gender identity and instructed her to read them. The articles included such topics as approaches children could take to hide their new gender identify from parents. A.G. informed Caldeira that she did not want to read the articles, but Caldeira insisted. Caldeira also instructed A.G. to keep the articles with her school papers so her mother would not discover them. A.G. complied with this directive.

48.     Caldeira also gave A.G. advice on how to bind her breasts so that she would look more like a boy.

49.     In the fall of 2019, A.G. informed Caldeira that she wanted her mother to know about her new gender identity. Caldeira instructed A.G. not to tell her mother. A.G. complied with this directive.

**Pagaran and Caldeira Arrange for Ms. Konen to be informed of her daughter's new gender identity**

50.     On or about December 18, 2019, Pagaran called Ms. Konen to her office to discuss A.G. Pagaran did not inform Ms. Konen what the meeting was about. Caldeira was present at the meeting. A.G. was also called to the meeting, although she also was not informed what it was about. At the meeting, Caldeira and Pagaran informed Ms. Konen that A.G. was now S.G., that Buena Vista was referring to her daughter by her new name, that Buena Vista was referring to her daughter with male pronouns, and that she would be using the unisex teachers' bathroom.

10

Complaint

22CV001813

51.     Ms. Konen was taken aback by this news, and she reasonably believed that if she did not process what was going on quickly enough, Defendants would attempt to have her daughter taken from her. She was supportive of A.G, and as a show of that support, she authorized an "a/k/a" of S.G. to be added to A.G.'s attendance roster, although she did not approve of any other changes to Buena Vista's records.  Defendants, however, went further than Ms. Konen's wishes and arranged for A.G.'s name to be changed to S.G. in Buena Vista's formal records, including progress reports, report cards, and her Google Meet online identity, and for A.G. to be given new email address with the name S.G.

52.     On information and belief, based on her role as Principal of Buena Vista, involvement in the Equality Club, and involvement in A.G.'s counseling, Pagaran authorized these actions.

53.     On or about March 13, 2020, Buena Vista, like other schools in California, began remote learning in response to the coronavirus pandemic. When students were engaged in online learning, teachers are able to see what students are doing on the internet through an application called Go Guardian. Caldeira and Baraki secretly used Go Guardian to pay close attention to the type of information that A.G. was looking up on the internet in order to better be able to continue to influence her in the distance learning environment.

54.     Over the remainder of the 2019-2020 school year, Ms. Konen had email correspondence with Caldeira regarding A.G. In that correspondence, Caldeira referred to A.G. by the name S.G. and used male pronouns to refer to her.

**A.G. is Freed from Caldeira's and Baraki's Influence**

55.     For the 2020-2021 school year, A.G.'s eighth-grade year, Buena Vista continued remote operations, and if students chose, they could stay remote for the duration of that school year. A.G. chose to be remote for the entire school year. Although distance learning was difficult for A.G. (like many students), there was a silver lining—because A.G. was at home throughout the school day, she was no longer in the clutches of Caldeira and Baraki. Freed from their influence, A.G. began to return to her original self.

56.     A.G. started high school in the fall of 2021 in a new school district. At her new school, A.G. goes by the name "A.G." and uses female pronouns. A.G. is confused about issues relating to her sexuality and gender, a confusion that Defendants caused. A.G. was pressured by Defendants into

11

Complaint

1  portraying a character they created, a character that, by being inhabited and hidden from her mother,

2  has taken on elements of reality that A.G. must now learn to understand and live with.

**The California Teachers Association Conference**

4        57.    On information and belief, based on news reporting regarding the event, on October

5  29-31, 2021, the California Teachers Association ("CTA") held a conference in Palm Springs, Florida

6  called "2021 LGBTQ+ Issues Conference, Beyond the Binary: Identity & Imagining Possibilities."

7  Among other things, the CTA Conference involved best practices workshops that encouraged teachers

8  to "have the courage to create a safe environment that fosters bravery to explore sexual orientation,

9  gender identity and expression."

10        58.    On information and belief, based on news reporting regarding the event, Caldeira and

11  Baraki led a workshop at the CTA Conference, titled "How we run a[n Equality Club] in Conservative

12  Communities."  The workshop focused on how Caldeira and Baraki ran the Equality Club in such a

13  way as to avoid parental detection.

14        59.    On information and belief, based on news reporting regarding the event, in the

15  workshop, Caldeira admitted that she and Baraki intentionally kept no club rosters for the Equality

16  Club and that they instructed club participants not to disclose information or documentation regarding

17  the club to their parents in order to limit parental knowledge of its workings.  Caldeira admitted that

18  the reason she and Baraki took these measures was because some parents might not want their children

19  to be participants in such a club.

20        60.    On information and belief, based on news reporting regarding the event, in the

21  workshop, Caldeira admitted that, because attendance at the Equality Club was down toward the end

22  of the 2019-2020 school year, in order to boost club attendance, she and Baraki "stalked what

23  [students] were doing on Google" when students were doing distance learning in an effort to identify

24  candidates for the club and to help them determine how best to coach students to pursue a new gender

25  identity, among other things.

26        61.    On information and belief, based on news reporting regarding the event, in the

27  workshop, Baraki admitted that she and Caldeira also used their "observations of kids in the

28

12

Complaint

1   classroom" to determine which students to invite to the Equality Club. Baraki admitted that students

2   often don't want to attend on their own and "need sort of a little bit of an invitation."

3       62.    On information and belief, based on news reporting regarding the event, in the

4   workshop, Caldeira admitted that she volunteered to run morning announcements at Buena Vista so

5   that she would be in a position to "control[s] the messaging." That way, she said, she could "control

6   the information that goes home."

7       63.    On information and belief, based on news reporting regarding the event, a recording

8   was made of Caldeira's and Baraki's presentation at the CTA conference.

9       64.    Or about November 18, 2021, news reports began being published regarding the CTA

10  Conference based, in part, on the recording. The news reports focused on Caldeira's and Baraki's

11  efforts to convince students to identify as homosexual, bisexual, transgender, gender non-conformists,

12  *etc.*, and to keep that information secret from parents.

13      65.    Plaintiffs do not have first-hand knowledge regarding the events of the CTA

14  conference. They base their allegations regarding the goings-on at the conference from the news

15  reports of that event that they have read.

16      66.    Ms. Konen and A.G. became aware of the news reports soon after they were published.

17  Since that time, Ms. Konen and her daughter have discussed Defendants' activities in coaching A.G.

18  to believe she was bisexual and transgender, efforts to convince A.G. to believe that Ms. Konen would

19  not be supportive of her, and efforts to conceal A.G.'s new gender identity, new name, use of pronouns,

20  and use of the unisex teachers' bathrooms, none of which Ms. Konen knew before. Further, based on

21  the news reports, A.G. has come to realize that Defendants pushed the new gender identity upon her

22  rather than the idea originating with her. Prior to reading these news reports, Plaintiffs did not know

23  these facts and were unable to learn them through the exercise of reasonable diligence.

24      67.    Plaintiffs' claims as set forth herein did not accrue until November 18, 2021, at the

25  earliest.

26                          **Ms. Konen's and A.G.'s Harm**

27      68.    Ms. Konen respects her daughter's life choices and is supportive of her, no matter what

28  those choices ultimately may be. Ms. Konen simply wants to be involved in A.G.'s life and assist her

13

Complaint

1   with those choices that have fundamental importance to the rest of her life, such as her gender identity,

2   including, if necessary, seeking professional mental and spiritual health guidance and assistance to

3   assist both A.G. and herself through the process. Defendants, however, deprived Ms. Konen of that

4   right, foisting a new gender identity upon A.G. and concealing that fact from Ms. Konen, depriving

5   her of her daughter's trust during a crucial phase of her development, causing great harm to her

6   relationship with her daughter, and disrupting the integrity of her family.

7       69.     Defendants' acts have driven a wedge between Ms. Konen and her daughter, sending

8   the message to A.G. that her mother cannot be trusted and does not support her, and Ms. Konen's

9   relationship with her daughter has been seriously damaged because of Defendants' actions as set forth

10  herein. By cutting Ms. Konen out of the decision-making process for A.G. on matters as intimate and

11  consequential as gender identity, Defendants have caused Ms. Konen and A.G. to suffer severe

12  emotional distress, mental anguish, psychological damage, and damage to their family dynamic of

13  such a substantial or enduring quality that no reasonable person in a civilized society should be

14  expected to endure it and reasonable people would be unable adequately to cope with it.

15      70.     Defendants caused Plaintiffs harm that will require separate counseling and healing.

16  Both Ms. Konen and her daughter have sought guidance from their pastor in attempting to overcome

17  the harm set forth herein, and they are likely to continue seeking such guidance in the future, among

18  other potential mental health treatment.  In addition, A.G. has required professional care and treatment

19  from medical providers, which Ms. Konen has been required to pay for, and she is likely to continue

20  requiring such care and treatment in the future.

21                  **Exhaustion of Claims Under the Government Claims Act**

22      71.     On January 19, 2022, Plaintiffs, through their undersigned counsel, presented a claim

23  under the Government Claims Act to Spreckels Union based on the facts alleged herein.  The claim

24  (1) was made on the claim form published by Spreckels Union pursuant to Gov't Code § 910.4; (2)

25  complied or substantially complied as to form and content with Gov't Code §§ 910, 910.2, 910.4 and

26  all other provisions of law; (3) was mailed, first class mail through the United States Post Office, to

27  Spreckels Union at the address set forth on the claim form in compliance or substantial compliance

28  with Gov't Code § 915(a)(2); and (4) was emailed to the email address of Spreckels Union's business

14

Complaint

1  manager, who was designated as the recipient on the Spreckels Union claim form. Plaintiffs thus

2  complied or substantially complied with all claim presentation requirements.

3         72.    Spreckels Union did not respond to the claim within the 45-day period set forth in Gov't

4  Code § 912.4(a) or the additional grace period set forth in Gov't Code § 915.2(b).

5         73.    Under Gov't Code § 912.4(c), Spreckels Union's failure to act on Plaintiffs claim

6  within the time period provided by law is deemed a rejection of the claim. Accordingly, the claim is

7  exhausted.

8                                    **CLAIMS**

9                              **FIRST CAUSE OF ACTION**

10              **VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

11      **(Substantive Due Process Right to Direct the Upbringing of One's Children)**

12        74.    Ms. Konen incorporates all allegations of this Complaint by reference as if set forth in

13  full herein.

14        75.    The Due Process Clause of the 14th Amendment to the United States Constitution

15  protects the fundamental rights of parents to direct the upbringing of their children; to make decisions

16  concerning the care, custody, and control of their children; to direct the medical and mental health

17  decision-making for their children; and to make private familial decisions regarding their children

18  without interference by the state, among other things.

19        76.    Defendants have infringed upon Ms. Konen's parental rights under the Due Process

20  Clause by, among other things:  (1) manipulating A.G. into believing she was bisexual and that her

21  gender did not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s

22  assertion of a new gender identity and expression and adopting protocols aimed at secretively

23  affirming A.G's new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not

24  to tell her about the new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G.

25  by one name and pronouns in communications with her while referring to A.G. by a different name

26  and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-

27  being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the

28  ultimate decisionmaker regarding A.G.'s mental health and well-being, including decisions related to

15

Complaint

A.G.'s gender identity and expression and mental health; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and / or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities and deception of parents.

77.     Defendants have no compelling, significant, important, or legitimate interest that is served by disregarding Ms. Konen's constitutional rights to direct the upbringing of her child. Further, Defendants' actions as alleged herein do not further any such interest, is not narrowly tailored to do so, and is without any rational basis.

78.     Pagaran inadequately trained and /or supervised Caldeira and Baraki, knew of and acquiesced to the constitutional deprivations alleged herein, and was deliberately indifferent to Ms. Konen's parental rights.

79.     Ms. Konen has suffered severe or extreme emotional distress and monetary losses that were actually and proximately caused by Defendants' conduct.

80.     Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Ms. Konen's rights, wanton, willful, malicious, and oppressive.

## SECOND CAUSE OF ACTION

## CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

### IN VIOLATION OF 42 U.S.C. § 1985(3)

81.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

82.     Defendants formed and operated a conspiracy by agreeing to undertake a common plan or design for the purpose of violating Ms. Konen's constitutional rights as alleged herein. As evidenced by the title of Caldeira and Baraki CTA Convention workshop, Defendants predicated their policies and actions on the belief that parents with a conservative political or religious affiliation could

16

Complaint

1    not be trusted with information about their children's change in gender identity and expression, a belief

2    that constitutions class-based, invidiously discriminatory animus.

3           83.     Defendants committed wrongful acts in furtherance of the conspiracy by, among other

4    things: (1) manipulating A.G. into believing she was bisexual and that her gender did not match her

5    biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender

6    identity and expression and adopting protocols aimed at secretively affirming A.G's new gender

7    identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new

8    gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and

9    pronouns in communications with her while referring to A.G. by a different name and pronouns

10    outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G.

11    and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decision

12    maker regarding A.G.'s mental health and well-being, including decisions related to A.G.'s gender

13    identity and expression and mental health; (6) impermissibly injecting themselves into the private

14    realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s

15    gender identity and expression and mental health and well-being; and (7) informing A.G. that her

16    mother did not "support" her sufficiently to participate in decision-making related to her gender

17    identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was

18    acting in her best interest and creating a rift in the parent-child relationship.

19           84.     Ms. Konen has suffered severe or extreme emotional distress and monetary losses that

20    were actually and proximately caused by Defendants' conduct.

21           85.     Defendants' actions as alleged herein, were grossly negligent, in reckless disregard of

22    Plaintiffs' rights, wanton, willful, malicious, and oppressive.

**THIRD CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS / GOV'T CODE § 815.2**

25           86.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

26           87.     Defendants have engaged in extreme and outrageous conduct with malice and the

27    intention of causing, or reckless disregard for the probability of causing, emotional distress upon

28    Plaintiffs. Specifically, Defendants engaged in extreme and outrageous conduct in the following ways,

17

Complaint

among others: (1) manipulating A.G. into believing she was bisexual and that her gender did not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and expression and adopting protocols aimed at secretively affirming A.G's new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in communications with her while referring to A.G. by a different name and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker regarding A.G.'s mental health and well-being, including decisions related to A.G.'s gender identity and expression and mental health; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and / or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities and deception of parents.

88.     Plaintiffs have suffered severe or extreme emotional distress and monetary losses that were actually and proximately caused by Defendants' conduct.

89.     Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

### FOURTH CAUSE OF ACTION

### NEGLIGENCE / GOV'T CODE § 815.2

**(Negligence, Negligent Infliction of Emotional Distress, and Negligent Supervision)**

90.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

91.     As A.G.'s school, principal, and teachers, Defendants were in a special relationship with A.G.  This special relationship imposed upon Defendants the duty not to harm A.G. and to take

18

Complaint

1  all reasonable steps to protect her from foreseeable dangers, including, but not limited to, those created

2  by other Spreckels Union employees.

3      92.    Because Defendants engaged in a cover-up to conceal information from Ms. Konen

4  about A.G.'s new gender identity and expression and use of the teachers' restroom and because

5  Defendants should have foreseen that this concealment would cause Ms. Konen more emotional

6  distress than merely informing her of these facts in the first place, Defendants also were in a special

7  relationship with Ms. Konen.  As such, Defendants' deliberately usurped Ms. Konen's parental

8  prerogative to protect A.G., and Ms. Konen is thus a direct victim of Defendants' negligence.

9      93.    Defendants breached their duties to Plaintiffs by, among other things: (1) manipulating

10  A.G. into believing she was bisexual and that her gender did not match her biological sex; (2)

11  excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and

12  expression and adopting protocols aimed at secretively affirming A.G's new gender identity and

13  expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new gender identity

14  and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in

15  communications with her while referring to A.G. by a different name and pronouns outside of her

16  presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking

17  to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker

18  regarding A.G.'s mental health and well-being, including decisions related to A.G.'s gender identity

19  and expression and mental health; (6) impermissibly injecting themselves into the private realm of

20  Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender

21  identity and expression and mental health and well-being; (7) informing A.G. that her mother did not

22  "support" her sufficiently to participate in decision-making related to her gender identity and

23  expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her

24  best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and

25  / or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of

26  law set forth herein despite knowing their dangerous proclivities and deception of parents.

27      94.    Plaintiffs have suffered severe or extreme emotional distress and monetary losses that

28  were actually and proximately caused by Defendants' conduct.

19

95.     Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

### FIFTH CAUSE OF ACTION

### NEGLIGENCE *PER SE* / GOV'T CODE §§ 815.2 AND 815.6

### (Violation of Cal. Educ. Code § 51100, *et seq.*)

96.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

97.     Under Cal. Educ. Code § 51100, it is the public policy of this State that "parents . . . of school age children attending public schools [should be involved] in improving public education institutions" and that "involving parents . . . in the education process is fundamental to healthy system of public education." Under Cal. Educ. Code § 51101(a)(9), (10) (12), Defendants owed Ms. Konen a duty to "inform[ her] of [A.G.'s] progress in school," to provide her access to A.G.'s "school records," to "inform[ her] . . . about school rules," and to allow her to "participate in [A.G.'s] education."

98.     These duties were designed to protect against the particular types of injuries alleged herein.

99.     Defendants breached these duties by, among other things: (1) failing to provide notice to Ms. Konen of the Parental Secrecy Policy; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and expression and adopting protocols aimed at secretively affirming the new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her mother about her new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in communications with her while referring to A.G. by a different name and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker regarding the mental health of A.G., including decisions related to A.G.'s gender identity and expression and mental health and well-being; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making

20

Complaint

related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen is acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and / or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities and deception of parents.

100.    Plaintiffs have suffered severe or extreme emotional distress and monetary losses that were actually and proximately caused by Defendants' conduct.

101.    Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

## SIXTH CAUSE OF ACTION

### VIOLATION OF BANE ACT / GOV'T CODE § 815.2

### (Cal Civ. Code § 52.1(b))

102.    Ms. Konen incorporates all allegations of this Complaint as if set forth in full herein.

103.    The Due Process Clause of the 14th Amendment to the United States Constitution protects the fundamental rights of parents to direct the upbringing of their children; to make decisions concerning the care, custody, and control of their children; to direct the medical and mental health decision-making for their children; and to make private familial decisions regarding their children without interference by the state, among other things.

104.    Defendants have infringed upon Ms. Konen's parental rights under the Due Process Clause by, among other things: (1) manipulating A.G. into believing she was bisexual and that her gender did not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and expression and adopting protocols aimed at secretively affirming A.G's new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in communications with her while referring to A.G. by a different name and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker regarding A.G.'s mental health and well-being, including decisions related to

21

A.G.'s gender identity and expression and mental health; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and/or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities and deception of parents.

105.   Defendants have no compelling, significant, important, or legitimate interest that is served by disregarding Ms. Konen's constitutional rights to direct the upbringing of her child. Further, Defendants' actions as alleged herein do not further any such interest, is not narrowly tailored to do so, and is without any rational basis.

106.   Defendants accomplished or attempted to accomplish the infringement of Ms. Konen's rights under the Due Process Clause through coercion. Specifically, Caldeira and Baraki were A.G.'s teachers and, by imposition of their authority as such, their directive to A.G. to withhold information from her mother was unlawfully coercive in violation of the Bane Act.

107.   Plaintiffs have suffered severe or extreme emotional distress and monetary losses that were actually and proximately caused by Defendants' conduct.

108.   Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

## SEVENTH CAUSE OF ACTION

## CIVIL CONSPIRACY

### (Against Caldeira, Baraki, and Pagaran)

109.   Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

110.   Caldeira, Baraki, and Pagaran formed and operated a conspiracy by agreeing to a common plan or design to commit tortious acts as alleged herein. Caldeira, Baraki, and Pagaran had

22

Complaint

1     actual knowledge that a tort was planned and concurred in the tortious scheme with knowledge of its

2     unlawful purpose.

3          111.     Caldeira, Baraki, and Pagaran committed wrongful acts in furtherance of the conspiracy

4     by, among other things: (1) manipulating A.G. into believing she was bisexual and that her gender did

5     not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of

6     a new gender identity and expression and adopting protocols aimed at secretively affirming A.G's new

7     gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the

8     new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and

9     pronouns in communications with her while referring to A.G. by a different name and pronouns

10     outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G.

11     and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate

12     decisionmaker regarding A.G.'s mental health and well-being, including decisions related to A.G.'s

13     gender identity and expression and mental health; (6) impermissibly injecting themselves into the

14     private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding

15     A.G.'s gender identity and expression and mental health and well-being; and (7) informing A.G. that

16     her mother did not "support" her sufficiently to participate in decision-making related to her gender

17     identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was

18     acting in her best interest and creating a rift in the parent-child relationship.

19          112.     Plaintiffs have suffered severe or extreme emotional distress and monetary losses that

20     were actually and proximately caused by Defendants' conduct.

21          113.     The actions of Caldeira, Baraki, and Pagaran, as alleged herein, were grossly negligent,

22     in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

23                           **PRAYER FOR RELIEF**

24        WHEREFORE, Plaintiffs pray this Court grant the relief requested herein, specifically that the

25     Court render the following judgment in Plaintiffs' favor and against Defendants:

26       **i.**        A declaration that Defendants violated Plaintiffs' rights as alleged herein;

27       **ii.**       Nominal, compensatory, treble, and punitive damages in an amount greater than

28     $25,000;

23

Complaint

iii.     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1(i), and California Code of Civil Procedure § 1021.5; and

iv.     Such other relief as the Court deems proper.

DHILLON LAW GROUP INC.

Date: June 14, 2022

By:

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

MARK E. TRAMMELL*
mtrammell@libertycenter.org
JOSHUA WALLACE DIXON*
jdixon@libertycenter.org
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
Telephone: (703) 687-6212
Facsimile: (517) 465-9683

*Pro hac vice motion forthcoming

Attorneys for Plaintiffs Jessica Konen and A.G., her minor child

24

Complaint

1

2

**DEMAND FOR JURY TRIAL**

3

Plaintiffs demand trial by jury in this action of all issues so triable.

4

5

DHILLON LAW GROUP INC.

6

Date: June 14, 2022

7

By:

8

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com

9

DHILLON LAW GROUP INC.

10

177 Post Street, Suite 700
San Francisco, California 94108

11

Telephone: (415) 433-1700
Facsimile: (415) 520-6593

12

13

MARK E. TRAMMELL*
mtrammell@libertycenter.org

14

JOSHUA WALLACE DIXON*
jdixon@libertycenter.org

15

CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302

16

Mount Airy, MD 21771
Telephone: (703) 687-6212

17

Facsimile: (517) 465-9683

18

*_Pro hac vice_ motion forthcoming

19

_Attorneys for Plaintiffs Jessica Konen and A.G., her minor child_

20

21

22

23

24

25

26

27

28

25

Complaint

# EXHIBIT B

**POS-015**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**   STATE BAR NO:<br>NAME: Harmeet K. Dhillon (SBN 207873)/Matthew M. Hoesly (SBN 289593)<br>FIRM NAME: Dhillon Law Group Inc.<br>STREET ADDRESS: 177 Post Street, Suite 700<br>CITY: San Francisco   STATE: CA   ZIP CODE: 94108<br>TELEPHONE NO.: 415-433-1700   FAX NO.: 415.520.6593<br>E-MAIL ADDRESS: Harmeet@Dhillonlaw.com<br>ATTORNEY FOR (Name): Plaintiffs Jessica Konen, and A.G., her minor child | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey 93940
BRANCH NAME: Monterey Courthouse

Plaintiff/Petitioner: JESSICA KONEN, et al.
Defendant/Respondent: LORI CALDEIRA, in her personal capacity, et al.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>22CV001813 |

TO (insert name of party being served): Defendant KATELYN PAGARAN, in her personal capacity

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: August 15, 2022

Harmeet K. Dhillon
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

---

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other (specify):

   Complaint, Civil Case Cover Sheet, Notice of Assignment and Case Management Conference

*(To be completed by recipient):*

Date this form is signed: 8/22/2022

LOUIS A. LEONE
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _(signature)_
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

For your protection and privacy, please press the Clear
This Form button after you have printed the form.   [ Print this form ]   [ Save this form ]   [ Clear this form ]

POS-015

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**          STATE BAR NO:<br>NAME: Harmeet K. Dhillon (SBN 207873)/Matthew M. Hoesly (SBN 289593)<br>FIRM NAME: Dhillon Law Group Inc.<br>STREET ADDRESS: 177 Post Street, Suite 700<br>CITY: San Francisco          STATE: CA     ZIP CODE: 94108<br>TELEPHONE NO.: 415-433-1700     FAX NO.: 415.520.6593<br>E-MAIL ADDRESS: Harmeet@Dhillonlaw.com<br>ATTORNEY FOR (Name): Plaintiffs Jessica Konen, and A.G., her minor child | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey 93940
BRANCH NAME: Monterey Courthouse

Plaintiff/Petitioner: JESSICA KONEN, et al.

Defendant/Respondent: LORI CALDEIRA, in her personal capacity, et al.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>22CV001813 |

TO (insert name of party being served): Defendant SPRECKELS UNION SCHOOL DISTRICT

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: August 15, 2022

Harmeet K. Dhillon
(TYPE OR PRINT NAME)          ▶          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other (specify):

   Complaint, Civil Case Cover Sheet, Notice of Assignment and Case Management Conference

(To be completed by recipient):

Date this form is signed: 8/22/2022

Louis A. Leone
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)          ▶          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]<br>**For your protection and privacy, please press the Clear<br>This Form button after you have printed the form.** | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**<br>[Print this form]  [Save this form] | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov<br>[Clear this form] |

# EXHIBIT C

**[Exempt from payment of filing fees (Government Code § 6103)]**

1  LOUIS A. LEONE, ESQ. (*Of Counsel*) (SBN 099874)
2  BRIAN A. DUUS, ESQ. (SBN 263403)
   JIMMIE E. JOHNSON, ESQ. (SBN 223344)
3  **LEONE ALBERTS & DUUS**
   A Professional Corporation
4  1390 Willow Pass Road, Suite 700
   Concord, CA 94520-7913
5  Telephone:    (925) 974-8600
6  Facsimile:    (925) 974-8601
   Email: lleone@leonealberts.com
7        bduus@leonealberts.com
8        jjohnson@leonealberts.com

9  Attorneys for DEFENDANTS
   SPRECKELS UNION SCHOOL DISTRICT
10 and KATELYN PAGARAN

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 9/8/2022 11:21 AM
By: Veronica Green, Deputy

11              SUPERIOR COURT OF CALIFORNIA

12                  COUNTY OF MONTEREY

13 | JESSICA KONEN and A.G., her minor    Case No.: **22CV001813**
14 | child,

15 |         Plaintiffs,

16 |   vs.                                **ANSWER BY DEFENDANTS**
                                          **SPRECKELS UNION SCHOOL DISTRICT**
17 |                                       **AND KATELYN PAGARAN TO**
   | LORI CALDEIRA, in her personal capacity, **PLAINTIFFS' COMPLAINT**
18 | KELLY BARAKI, in her personal capacity;
19 | KATELYN PAGARAN, in her personal
   | capacity; and SPRECKELS UNION
20 | SCHOOL DISTRICT,

21 |         Defendants.

22 |

23 |                                       Complaint Filed: June 27, 2022
24 |                                       Trial Date:  Not Yet Set

25

26

27        Comes now DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT

28  ("DISTRICT") and KATELYN PAGARAN ("PAGARAN")(collectively "DEFENDANTS")

                                    1

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO
PLAINTIFFS' COMPLAINT

to answer the Complaint of PLAINTIFFS JESSICA KONEN ("KONEN") and A.G., her minor child ("A.G.") (collectively "PLAINTIFFS"), on file herein, and DEFENDANTS admit, deny, and allege as follows:

## GENERAL DENIAL

Under the provisions of Section 431.30(d) of the California Code of Civil Procedure, DEFENDANTS deny each and every, all and singular, generally and specifically, the allegations contained in said Complaint, and further deny that PLAINTIFFS have been damaged in any sum or sums, or at all, by reason of any act or omission on the part of these answering DEFENDANTS.

DEFENDANTS assert the following Affirmative Defenses and reserve the right to supplement the Affirmative Defenses in the course of this proceeding:

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State Claim)

1.      DEFENDANTS allege that PLAINTIFFS' Complaint fails to state facts sufficient to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2.      DEFENDANTS allege that PLAINTIFFS' Complaint is barred by all applicable statutes of limitations including, but not limited to, Cal. Gov't Code §§ 911.2 and 945.6, and Cal. Code Civ. Proc. §§ 335, et seq., including Cal. Code Civ. Proc. § 335.1 as it relates to both federal and state causes of action.

## THIRD AFFIRMATIVE DEFENSE

### (Waiver and Estoppel)

3.      DEFENDANTS allege that PLAINTIFFS' Complaint is barred by the doctrines of waiver and estoppel.

//

//

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

## FOURTH AFFIRMATIVE DEFENSE

(Laches)

4.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

(Negligent/Culpable Conduct of Others)

5.     DEFENDANTS allege that the injuries and damages sustained by PLAINTIFFS, if any, were caused in whole or in part by the negligent and/or culpable conduct of others, for which DEFENDANTS are not liable.

## SIXTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

6.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred in whole or in part by PLAINTIFFS' failure to mitigate their damages.

## SEVENTH AFFIRMATIVE DEFENSE

(Governmental Immunities/Defenses)

7.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred in whole or in part because all actions and conduct by DEFENDANTS and their agents or employees were justified and subject to governmental immunities and defenses, including but not limited to the immunities and defenses arising under the United States Constitution and federal law, immunities arising under the California Constitution and California law, immunities arising under Government Code Sections 810, *et seq.* including, but not limited to, Sections 815, 815.2, 818, 818.2, 818.8, 820.2, 820.4, 820.6, 820.8, 821.6, and 822.2.  This would include the discretionary immunity contained in Government Code Section 820.2 with respect to discretionary decisions with respect to policies, conduct and procedures of school operation.

//

//

//

3

### EIGHTH AFFIRMATIVE DEFENSE

(Lack of Standing)

8.    DEFENDANTS allege that PLAINTIFF JESSICA KONEN lacks legal standing and as such her claims are barred.

### NINTH AFFIRMATIVE DEFENSE

(Proposition 51)

9.    DEFENDANTS allege that the provisions of the Fair Responsibility Act of 1986 (commonly known as Proposition 51, Civil Code Sections 1430 – 1432) are applicable to this action to the extent that PLAINTIFFS' injuries and damages, if any, were legally caused or contributed to by the negligence or fault of persons or entities other than these DEFENDANTS. Such negligence or apportionment of fault does not include any such on the part of the minor plaintiff in this action.

### TENTH AFFIRMATIVE DEFENSE

(Failure to Comply with Claim Statute)

10.    DEFENDANTS allege that PLAINTIFFS' Complaint is barred by PLAINTIFFS' failure to comply with the California Tort Claims Act, Government Code section 905, *et seq.*, claims presentation requirements in that PLAINTIFFS failed to timely present a claim asserting all causes of action and/or all factual and legal bases for liability asserted in the Complaint, and/or failed to timely file suit following the denial of said claim.  Moreover, all causes of action, factual and/or legal allegations asserted in the Complaint that were not asserted in any claim presented by PLAINTIFFS are barred under the California Tort Claims Act.

### ELEVENTH AFFIRMATIVE DEFENSE

(No Punitive Damages)

11.    DEFENDANTS allege that as a public entity, the DISTRICT is immune from punitive damages pursuant to Government Code Section 818.

//

//

4

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

## TWELFTH AFFIRMATIVE DEFENSE

(Qualified Immunity)

12.     DEFENDANTS allege that PLAINTIFFS did not have any clearly established statutory or constitutional rights of which DEFENDANTS knew, or should have known, which required DEFENDANTS to act differently or to direct their subordinates to act differently, and therefore DEFENDANTS are immune from PLAINTIFFS' allegations, causes of action, and from liability under the doctrine of qualified immunity.

## THIRTEENTH AFFIRMATIVE DEFENSE

(No Constitutional Violation)

13.     DEFENDANTS allege that DEFENDANTS and their officers, agents or employees held a good faith and reasonable belief at all times in connection with the matters alleged herein that their actions and their subordinates' actions did not violate any established constitutional right.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Lack of Jurisdiction)

14.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred based on a lack of jurisdiction, and DEFENDANTS expressly reserve the right to challenge jurisdiction herein.

## FIFTEENTH AFFIRMATIVE DEFENSE

(DISTRICT is not a "Person" under 42 U.S.C §§ 1983 and 1985)

15.     DEFENDANT DISTRICT alleges that as a political subdivision of the State of California, it is not a "person" within the meaning of 42 U.S.C. §§ 1983 and 1985, and therefore the DISTRICT is not subject to suit under those statutes, thus the allegations to that effect in the Complaint are barred. Moreover, PLAINTIFFS' claims are barred by the 11th Amendment to the United States Constitution.

//

//

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

## SIXTEENTH AFFIRMATIVE DEFENSE

(Defenses unknown)

16.     DEFENDANTS presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, defenses available. DEFENDANTS reserve the right to assert additional defenses in the event discovery indicates that they would be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, these answering DEFENDANTS pray that PLAINTIFFS take nothing by their Complaint and that these answering DEFENDANTS be dismissed with costs of suit incurred herein and for such other and further relief as the Court deems fit and proper.

Dated:  September 8, 2022          **LEONE ALBERTS & DUUS**

BRIAN A. DUUS, ESQ.
Attorneys for DEFENDANTS
SPRECKELS UNION SCHOOL DISTRICT and
KATELYN PAGARAN

6

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

**Re:** <u>**Jessica Konen, et al. v. Lori Caldeira, et al.**</u>
     **Contra Costa County Superior Court Case No.:  C22-01336**

<u>**PROOF OF SERVICE**</u>

I, the undersigned, declare that I am employed in the City of Concord, State of California.  I am over the age of 18 years and not a party to the within cause; my business address is 1390 Willow Pass Road, Suite 700, Concord, California.

On September 8, 2022, I served the following documents:

**ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT**

on the following interested party(s) in said cause:

<u>**PLAINTIFFS' COUNSEL**</u>
Harmeet K. Dhillon
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, CA 94108
T: 415.433.1700
F: 415.520.6593
E: <u>harmeet@dhillonlaw.com</u>

<u>**PLAINTIFFS' COUNSEL**</u>
Matthew M. Hoesley
DHILLON LAW GROUP, INC.
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660
T: 949.396.0608
E: <u>mhoesly@dhillonlaw.com</u>

<u>**PLAINTIFFS' COUNSEL**</u>
Mark E. Trammell
Joshua Wallace Dixon
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
T: 703.687.6212
F: 517.465.9683
E: <u>mtrammel@libertycenter.org</u>
E: <u>jdixon@libertycenter.org</u>

7

**COUNSEL FOR KELLY BARAKI and**
**LORI CALDEIRA**
Mark E. Davis
DAVIS BENGSTON & YOUNG
1960 The Alameda, Suite 210
San Jose, CA 95126
T: 669.245.4200
F: 408.985.1814
E: mdavis@dby-law.com


**VIA MAIL - CCP §§ 1013(a), 2015.5**

☒   By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above and placing each for collection and mailing on that date following ordinary business practices.  I am readily familiar with my firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Concord, California, with postage thereon fully prepaid, that same day in the ordinary course of business.

**VIA ELECTRONIC MAIL TRANSMISSION - CCP §1010.6**

☒   By electronic transmission via email to the authorized electronic service address(es) given above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on September 8, 2022, at Concord, California.

SYREETA SHOALS

8

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT