## **EXHIBIT A**

The state court docket reflects the following documents have been filed and served on Defendants:

| # | File | Date | Filed By: |
|---|------|------|-----------|
| A:1 | Complaint Filed | 6/27/2022 | Plaintiffs |
| A:2 | Civil Case Cover Sheet | 6/27/2022 | Plaintiffs |
| A:3 | Notice of Judicial Assignment and CMC | 6/28/2022 | Plaintiffs |
| A:4 | Plaintiff A.G.'s Notice of Motion & Motion to File Under Seal | 9/8/2022 | Plaintiffs |
| A:5 | Memorandum: Points and Authorities in Support of Plaintiff A.G.'s Motion to Seal | 9/8/2022 | Plaintiffs |
| A:6 | Declaration of Matthew Hoesly in Support of Plaintiff A.G.'s Motion to Seal | 9/8/2022 | Plaintiffs |
| A:7 | Defendants Spreckels Union School District & Katelyn Pagaran's Answer to Plaintiffs' Complaint | 9/8/2022 | Defs. SUSD & Pagaran |
| A:8 | Answer of Defendants Lori Caldeira & Kelly Baraki to Complaint | 9/9/2022 | Defs. Caldeira & Baraki |

The following documents are not on the state court docket but were served on or by Defendants:

| # | File | Date |
|---|------|------|
| A:9 | [Proposed] Order Granting Plaintiff A.G.'s Motion to Under Seal | 9/8/2022 |
| A:10 | Notice of Acknowledgement of Receipt – Katelyn Pagaran | 8/22/2022 |
| A:11 | Notice of Acknowledgement of Receipt – Spreckels Union School District | 8/22/2022 |

All of the foregoing is included in this Exhibit A:1-11.

The following documents are on the state court docket however were not served on Defendants and are not included in this Exhibit A:

| # | File | Date | Filed By: |
|---|------|------|-----------|
| n/a | Summons: Issued/Filed | 6/27/2022 | Plaintiffs |
| n/a | Application: Pro Hac Vice | 7/27/2022 | Plaintiffs |
| n/a | Notice | 7/27/2022 | Plaintiffs |
| n/a | Proof of Service | 8/30/2022 | Plaintiffs |

# EXHIBIT A:1

# EXHIBIT A:1

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

MARK E. TRAMMELL*
mtrammell@libertycenter.org
JOSHUA WALLACE DIXON*
jdixon@libertycenter.org
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
Telephone: (703) 687-6212
Facsimile: (517) 465-9683

*Pro hac vice motion forthcoming

Attorneys for Plaintiffs Jessica Konen and A.G., her minor child

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 6/27/2022 2:20 PM
By: Rowena Esquerra, Deputy

## SUPERIOR COURT OF CALIFORINA

## COUNTY OF MONTEREY

| | |
|---|---|
| **JESSICA KONEN and A.G., her minor child,** | Case No: 22CV001813 |
| **Plaintiffs,** | **COMPLAINT** |
| v. | **42 U.S.C. § 1983; 42 U.S.C. § 1985(3));** |
| **LORI CALDEIRA, in her personal capacity; KELLY BARAKI, in her personal capacity; KATELYN PAGARAN, in her personal capacity; and SPRECKELS UNION SCHOOL DISTRICT,** | **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS / GOV'T CODE § 815.2; NEGLIGENCE / GOV'T CODE § 815.2; NEGLIGENCE *PER SE* / GOV'T CODE §§ 815.2 AND 815.6; BANE ACT / GOV'T CODE § 815.2; CIVIL CONSPIRACY** |
| **Defendants.** | **DEMAND FOR JURY TRIAL** |

Jessica Konen and A.G., her minor child (collectively, "Plaintiffs"), through their undersigned

counsel, state the following claims for relief against Lori Caldeira, in her personal capacity; Kelly

1

1   Baraki, in her personal capacity; Katelyn Pagaran, in her personal capacity; and the Spreckels Union

2   School District (collectively, "Defendants"):

3                                    **INTRODUCTION**

4       1.      Ms. Konen brings this action to vindicate her fundamental right under the Fourteenth

5   Amendment to the United States Constitution to direct the upbringing of her minor child, A.G.

6   Defendants, teachers and administrators at A.G.'s middle school, along with the school itself, secretly

7   convinced A.G.—who was 11 years old at the time—first, that she was bisexual and, later, that she

8   was transgender—*i.e.*, that her gender did not correspond with her biological sex.  Despite the

9   profound mental stress these actions inflicted on A.G., Defendants attempted to counsel A.G.

10  themselves, without her mother's involvement, instructing A.G. that she must not tell her mother, her

11  closest confidant, about her new supposed gender identity.

12      2.      At Defendants' sustained urging and direction, A.G. assumed a new gender identity,

13  different from her biological sex, including assuming a new name associated with her new gender

14  identity and going by new pronouns.  Defendants began referring to A.G. by her new name and

15  pronouns, changed A.G.'s name in certain educational records, and arranged for A.G. to use the unisex

16  bathroom at school that was otherwise reserved for teachers, all without informing or consulting with

17  her mother, Ms. Konen.

18      3.      In fact, Defendants attempted to actively deceive Ms. Konen of A.G.'s new gender

19  identity by using A.G.'s birth name and corresponding pronouns in her (Ms. Konen's) presence while

20  using A.G.'s new name and pronouns when she (Ms. Konen) was not present, by instructing A.G. that

21  she must not tell her mother about her new gender identity, and by otherwise concealing facts

22  regarding A.G.'s new gender identity from Ms. Konen.

23      4.      Ms. Konen supports her daughter, regardless of the decisions she makes. Ms. Konen

24  simply wants to be a part of her daughter's life and exercise her rights as a parent to direct the

25  upbringing of her child.  Defendants denied Ms. Konen of that right during a crucial phase of A.G.'s

26  development, choosing for themselves how to direct A.G.'s upbringing regarding the major life

27  decision of A.G.'s gender identity, and concealing critical facts from Ms. Konen, her parent.

28

                                           2

5.      In addition to violating Ms. Konen's right to direct the upbringing of her minor child, Defendants' actions also violated Ms. Konen's and A.G.'s rights under federal and state law and inflicted serious emotional and mental harm upon them.  Plaintiffs also seek vindication of these rights.

**JURISDICTION AND VENUE**

6.      Plaintiffs seek redress for injuries suffered from the deprivation, under color of state law, of rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and from violations of other federal and state laws.  The Court has jurisdiction over this matter pursuant to Article VI § 10 of the California Constitution.

7.      Venue is proper in this Court pursuant to California Civil Code §§ 393-395 because the injuries alleged herein occurred in Monterey County, California.

**PARTIES**

8.      Jessica Konen is a resident of Monterey County, California.

9.      A.G. is Ms. Konen's minor child. A.G. resides with her mother in Monterey County, California.

10.      Spreckels Union School District ("Spreckels Union") is a school district under California law located in Monterey County, California. Buena Vista Middle School ("Buena Vista") is a middle school (sixth through eighth grades) located in Monterey County, California and within Spreckels Union.  A.G. attended Buena Vista from the fall of 2018 to the spring of 2021 for the sixth through eighth grades.

11.      At all times relevant herein, Katelyn Pagaran was the Principal of Buena Vista, an agent, servant, and / or employee of Spreckels Union, and acting in the scope of her authority.   On information and belief, based on her role as Principal of Buena Vista, Pagaran, among others, is responsible for implementing the policies, practices, customs, and procedures of Spreckels Union in effect at Buena Vista as adopted by others, for overseeing the educational environment and the performance of teachers and counselors, for the training and / or supervision of employees at Buena Vista, including, but not limited to, Defendants Lori Caldeira and Kelly Baraki, and for the acts she committed that resulted in the deprivation of Plaintiffs' rights as set forth herein.

3

Complaint

12.     At all times relevant herein, Lori Caldeira was a teacher at Buena Vista, an agent, servant, and / or employee of Spreckels Union, and acting in the scope of her authority.  Caldeira, among others, is responsible for implementing the policies, practices, customs, and procedures of Spreckels Union at Buena Vista as adopted by others and for the acts she committed that resulted in the deprivation of Plaintiffs' rights as set forth herein.

13.     At all times relevant herein, Kelly Baraki was a teacher at Buena Vista, an agent, servant, and / or employee of Spreckels Union, and acting in the scope of her authority. Baraki, among others, is responsible for implementing the policies, practices, customs, and procedures of Spreckels Union at Buena Vista as adopted by others and for the acts she committed that resulted in the deprivation of Plaintiffs' rights as set forth herein.

## STATEMENT OF FACTS

### Spreckels Union Adopts the Parental Secrecy Policy

14.     Spreckels Union adopted and implemented a policy, practice, procedure, and/or custom at Buena Vista under which teachers and staff would keep certain information about students' gender identity and expression secret from parents (the "Parental Secrecy Policy"). Under the Parental Secrecy Policy, Spreckels Union teachers and staff at Buena Vista would conceal from parents that their minor children had articulated confusion about their gender identity, evinced a desire to change their gender identity, or assumed or expressed a new gender identity, unless the student expressly authorized the parents to be informed.

15.     Despite keeping this information secret from parents, Spreckels Union and its teachers and staff at Buena Vista would enable minor children to change their gender identity and expression at school by, among other things: (a) affirming students' gender confusion and compounding the confusion by encouraging students to transition gender identities; (b) addressing students by any new names associated with their new gender identity that they wanted to be called; (c) addressing students by pronouns the students indicated they wished to be called by; (d) changing educational records to reflect the students' new name and pronouns; and (e) pushing these students to use the unisex restroom otherwise reserved for teachers.

4

16.     In addition, Spreckels Union and its teachers and staff at Buena Vista would intentionally deceive parents regarding students' new gender identity and expression by, among other things, not publishing the Parental Secrecy Policy on the Spreckels Union website, using students' birth names and pronouns in communications with parents despite using students' new names and pronouns when parents were not there, instructing students they were not to tell their parents about their new gender identity or expression because their parents "couldn't be trusted," and otherwise concealing those facts from parents.

17.     The Parental Secrecy Policy, as described above and as adopted by Spreckels Union, authorizes minor children to make mature, consequential, and potentially life-altering decisions—such as what gender to identify as; how to express their gender identity, including, but not limited to, females binding their breasts so they look more like males; what name to be called; what pronouns to use; and what privacy facilities to use—with no notification to or input from parents.

18.     On information and belief, based on her role as Principal of Buena Vista, Pagaran was the Spreckels Union employee responsible for overseeing the implementation of the Parental Secrecy Policy at Buena Vista (although not for adopting the Parental Secrecy Policy, which would have been undertaken by the Spreckels Union Board of Trustees), for overseeing the educational environment and the performance of teachers and counselors, including, but not limited to Caldeira and Baraki, and for ensuring that teachers and staff, including but not limited to Caldeira and Baraki, were trained on the Parental Secrecy Policy.

19.     Pagaran, Caldeira, and Baraki, among others, implemented the Parental Secrecy Policy at Buena Vista.

**Caldeira and Baraki Operate the Equality Club and Hide it From Parents**

20.     Caldeira and Baraki are seventh-grade teachers at Buena Vista.  In addition to teaching, Caldeira and Baraki operated the Equality Club, a school-based club for students comprised primarily of students that Caldeira and Baraki had identified as students who they believed might be receptive to ideas such as homosexuality, bisexuality, transgenderism, gender non-conformity, etc.

21.     Caldeira and Baraki identified students for the Equality Club based on comments students made to them, comments that they overheard students make to others, and their own

5

Complaint

observations of students in the classroom setting, and otherwise. Once they identified students for the club, Caldeira and Baraki would invite them to participate.  In addition, often at Caldeira's and Baraki's suggestion, students already in the Equality Club would recruit other students to attend Equality Club meetings.

22.     At Equality Club meetings, Caldeira and Baraki would, among other things, discuss issues related to homosexuality, bisexuality, transgenderism, gender non-conformity, *etc.*  Through these discussions, Caldeira and Baraki coached students on how to express those identities.  Caldeira and Baraki instructed students to research a particular topic and then have follow-up discussions with the student about that research.

23.     Sometimes, Caldeira and Baraki would introduce and push identities on students, and the students resisted.

24.     Caldeira and Baraki took measures to keep students' participation in the Equality Club and student's new gender identities secret from students' parents. Specifically, Caldeira and Baraki: (1) instructed students that they should not tell their parents about their new gender identities; (2) purposefully failed to keep Equality Club rosters or records so that parents could not discover their children's participation in the club or new gender identities; and (3) held Equality Club meetings during lunch—as opposed to after school when other student clubs meet—so that students, who were too young to drive, did not have to ask their parents to pick them up so they could better hide their participation in the club and their new gender identities.

25.     Caldeira and Baraki took these measures because they knew some children's parents would not want their children to participate in a club in which homosexuality, bisexuality, transgenderism, gender non-conformity, *etc.*, were being promoted or to adopt these identities.[1]

26.     Pagaran was aware of the Equality Club and Caldeira's and Baraki's tactics as set forth above and approved of them.  In fact, Pagaran frequently attended Equality Club meetings.

---

[1] Caldeira and Baraki later changed the name of the Equality Club to the UBU (or, "You Be You") Club.  On information and belief, based on news reporting discussed in Paragraphs 57-64, Caldeira and Baraki changed the name of the club because parents had begun to learn about the goings on of the Equality Club, and they changed its name an effort better to avoid parental knowledge.

6

Complaint

**Caldeira and Baraki Begin Secretly Influencing A.G. and Instructing her to Hide Information**

**from Ms. Konen**

27.     A.G. started school at Buena Vista in the sixth grade during the 2018-2019 school year. At the time, A.G. was 11 years old.

28.     Near the beginning of A.G.'s sixth-grade year, she attended an Equality Club meeting at the invitation of a friend. Initially, A.G. was not interested in the discussion, and she decided not to come back to the club. About two weeks later, Caldeira approached A.G. and asked her to come back to the club. Caldeira told A.G. that she "fit in perfectly."  A.G. agreed to come back at Caldeira's direction, and she began attending Equality Club meetings on a regular basis.

29.     At these meetings and in other discussions, Caldeira and Baraki told A.G. that she was bisexual. That idea did not originate with A.G. In fact, she did not fully understand what that term meant.

30.     Shortly thereafter, Caldeira and Baraki told A.G. that she was transgender—*i.e.*, that her gender did not match her biological sex. As with the bisexual label the teachers applied to A.G., the idea that A.G. was instead transgender, did not originate with A.G., nor did A.G. fully understand what it meant.

31.     At the time Caldeira and Baraki labeled A.G. transgender, A.G. was pre-pubescent.

32.     By the spring of 2019, A.G. went to a Buena Vista school counselor complaining of depression and stress. A.G. began attending weekly counseling sessions with the school counselor, and, after the sessions with the counselor, Caldeira and Pagaran would often have follow-up meetings with A.G. and the school counselor regarding the same topics that were discussed in the counseling sessions. During those meetings, the counselor and Caldeira informed A.G. that the feelings she was having were because she was "not being who she was" and that if she became her "true self," her depression and stress would be better (or words to that effect).

33.     Caldeira and Baraki encouraged A.G. to change her name to a boy's name as an expression of the new identity they were encouraging her to take on.  A.G. assumed the name "S.G." and began wearing boys' clothing. At first, A.G. used the name S.G. at Equality Club and among her friends only.  Caldeira and Baraki also began referring to A.G. as S.G.

7

34.     Caldeira and Baraki instructed A.G. not to tell her mother about her new gender identity or new name, saying that her mother might not be supportive of her and that she couldn't trust her mother. They instructed A.G. that she should instead talk to them if she had anything she needed to talk about. Caldeira and Baraki were teachers, and A.G. trusted their authority over her. Accordingly, she complied with this directive.

35.     On information and belief, based on Pagaran's role as Principal of Buena Vista, involvement in the Equality Club, and involvement with A.G.'s counseling, Pagaran was aware that Caldeira and Baraki gave A.G. these instructions about concealing the new identity from her mother and approved of them.

36.     Caldeira signed A.G.'s Buena Vista's 2018-2019 yearbook, writing "S.G., Stay you! Looking forward to working with you next year."

**Defendants Formally Acknowledge A.G.'s New Name/Pronouns and Attempt to Hide the**
**Information from Ms. Konen**

37.     For A.G.'s seventh-grade year, which was the 2019-2020 school year, Caldeira and Baraki were two of her teachers. For this reason, they had more interaction with A.G. during that year, and they were able to form a closer relationship with her.

38.     Over the summer of 2019, A.G. received correspondence from Buena Vista regarding the upcoming school year. After receiving this correspondence, A.G. emailed Caldeira to ask her what name she should write on her school materials in light of the fact she was now going by S.G. in certain school settings. Caldeira instructed A.G. to "write whatever your mother will approve, and we'll fix it when you get to school" or words to that effect.

39.     Caldeira also emailed A.G. a Gender Support Plan, which is a Buena Vista document designed to govern how the school will treat students who want to identify as new gender. The Gender Support Plan contained questions regarding student preferences on such matters as their preferred name, pronouns, and restrooms, and whether students want their preferences to be made known to other teachers and administrators.

40.     Ms. Konen was not informed of the Gender Support Plan.

8

Complaint

41.     In the first week of her seventh-grade year, A.G. completed the Gender Support Plan with Caldeira and Baraki, with A.G. verbally responding to the questions on the Gender Support Plan and Caldeira writing the responses down.  On at least three occasions, Caldeira wrote responses that did not comply with A.G.'s wishes and that, instead, pushed A.G.'s new gender identity.  For example, the Gender Support Plan asked whether the student authorized administration to use the student's new name in correspondence with the student's parents. A.G. informed Caldeira that her response to that question was "Not yet."  Caldeira, however, wrote "Not ever.  Parent is not supportive" or words to that effect. In addition, the Gender Support Plan asked if the student authorized use of their new name and pronouns in the presence of other staff. A.G. informed Caldeira that her response to that question was "Maybe," but Caldeira wrote "Yes." Further, the Gender Support Plan asked if the student preferred to use different restrooms. A.G. informed Caldeira that she did not have a preference, but Caldeira wrote that she preferred to use the unisex teachers' restroom, which required the use of a key that teachers had.

42.     After A.G.'s Gender Support Plan was created, Caldeira sent an email to A.G.'s other teachers about A.G.'s new name, pronouns, and use of the unisex teachers' restroom. A.G.'s other teachers began referring to her as S.G. and using male pronouns to refer to her, and she began using the unisex teacher's restroom.

43.     On information and belief, based on Pagaran's role as Principal of Buena Vista, involvement in the Equality Club, and involvement with A.G.'s counseling, Pagaran approved of Caldeira's use of the Gender Support Plan for A.G.  In addition, after Caldeira completed the Gender Support Plan, Pagaran started referring to A.G. as S.G. as well.

44.     Ms. Konen was not informed about the Gender Support Plan or the changes in the way Buena Vista addressed and treated A.G.  Moreover, Ms. Konen received correspondence regarding A.G. from Buena Vista and had meetings with school personnel, including Caldeira, after Buena Vista changed the way it referred to and treated A.G. pursuant to the Gender Support Plan. Despite the fact Pagaran and Caldeira called A.G. by the name "S.G." and used masculine pronouns when referring to her at school, in correspondence from Buena Vista and in meetings with Ms. Konen, the school and

9

Complaint

1    Caldeira referred to A.G. as "A.G." and used female pronouns to refer to her in an effort to deceive

2    her about A.G.'s new identity and expression.

3         45.    In one in-person meeting with Ms. Konen, Caldeira accidentally referred to A.G. as

4    S.G.  She realized the mistake, and quickly moved on. The next day, Caldeira told A.G. that she had

5    "messed up" in the conversation with her mother.

6         46.    On information and belief, based on her role as Principal of Buena Vista, involvement

7    in the Equality Club, and involvement in A.G.'s counseling, Pagaran knew about this deception of Ms.

8    Konen and approved of it.

9         47.    Early in A.G.'s seventh-grade year, during Caldeira's English class, Caldeira gave A.G.

10   a print-out of approximately five articles on adopting a new gender identity and instructed her to read

11   them. The articles included such topics as approaches children could take to hide their new gender

12   identify from parents. A.G. informed Caldeira that she did not want to read the articles, but Caldeira

13   insisted. Caldeira also instructed A.G. to keep the articles with her school papers so her mother would

14   not discover them. A.G. complied with this directive.

15        48.    Caldeira also gave A.G. advice on how to bind her breasts so that she would look more

16   like a boy.

17        49.    In the fall of 2019, A.G. informed Caldeira that she wanted her mother to know about

18   her new gender identity. Caldeira instructed A.G. not to tell her mother. A.G. complied with this

19   directive.

20        **Pagaran and Caldeira Arrange for Ms. Konen to be informed of her daughter's**

21                          **new gender identity**

22        50.    On or about December 18, 2019, Pagaran called Ms. Konen to her office to discuss

23   A.G. Pagaran did not inform Ms. Konen what the meeting was about. Caldeira was present at the

24   meeting. A.G. was also called to the meeting, although she also was not informed what it was about.

25   At the meeting, Caldeira and Pagaran informed Ms. Konen that A.G. was now S.G., that Buena Vista

26   was referring to her daughter by her new name, that Buena Vista was referring to her daughter with

27   male pronouns, and that she would be using the unisex teachers' bathroom.

28

10

Complaint

51.     Ms. Konen was taken aback by this news, and she reasonably believed that if she did not process what was going on quickly enough, Defendants would attempt to have her daughter taken from her. She was supportive of A.G, and as a show of that support, she authorized an "a/k/a" of S.G. to be added to A.G.'s attendance roster, although she did not approve of any other changes to Buena Vista's records.  Defendants, however, went further than Ms. Konen's wishes and arranged for A.G.'s name to be changed to S.G. in Buena Vista's formal records, including progress reports, report cards, and her Google Meet online identity, and for A.G. to be given new email address with the name S.G.

52.     On information and belief, based on her role as Principal of Buena Vista, involvement in the Equality Club, and involvement in A.G.'s counseling, Pagaran authorized these actions.

53.     On or about March 13, 2020, Buena Vista, like other schools in California, began remote learning in response to the coronavirus pandemic. When students were engaged in online learning, teachers are able to see what students are doing on the internet through an application called Go Guardian. Caldeira and Baraki secretly used Go Guardian to pay close attention to the type of information that A.G. was looking up on the internet in order to better be able to continue to influence her in the distance learning environment.

54.     Over the remainder of the 2019-2020 school year, Ms. Konen had email correspondence with Caldeira regarding A.G. In that correspondence, Caldeira referred to A.G. by the name S.G. and used male pronouns to refer to her.

**A.G. is Freed from Caldeira's and Baraki's Influence**

55.     For the 2020-2021 school year, A.G.'s eighth-grade year, Buena Vista continued remote operations, and if students chose, they could stay remote for the duration of that school year. A.G. chose to be remote for the entire school year. Although distance learning was difficult for A.G. (like many students), there was a silver lining—because A.G. was at home throughout the school day, she was no longer in the clutches of Caldeira and Baraki. Freed from their influence, A.G. began to return to her original self.

56.     A.G. started high school in the fall of 2021 in a new school district. At her new school, A.G. goes by the name "A.G." and uses female pronouns. A.G. is confused about issues relating to her sexuality and gender, a confusion that Defendants caused. A.G. was pressured by Defendants into

11

Complaint

1  portraying a character they created, a character that, by being inhabited and hidden from her mother,

2  has taken on elements of reality that A.G. must now learn to understand and live with.

### The California Teachers Association Conference

4      57.      On information and belief, based on news reporting regarding the event, on October

5  29-31, 2021, the California Teachers Association ("CTA") held a conference in Palm Springs, Florida

6  called "2021 LGBTQ+ Issues Conference, Beyond the Binary: Identity & Imagining Possibilities."

7  Among other things, the CTA Conference involved best practices workshops that encouraged teachers

8  to "have the courage to create a safe environment that fosters bravery to explore sexual orientation,

9  gender identity and expression."

10     58.      On information and belief, based on news reporting regarding the event, Caldeira and

11  Baraki led a workshop at the CTA Conference, titled "How we run a[n Equality Club] in Conservative

12  Communities."  The workshop focused on how Caldeira and Baraki ran the Equality Club in such a

13  way as to avoid parental detection.

14     59.      On information and belief, based on news reporting regarding the event, in the

15  workshop, Caldeira admitted that she and Baraki intentionally kept no club rosters for the Equality

16  Club and that they instructed club participants not to disclose information or documentation regarding

17  the club to their parents in order to limit parental knowledge of its workings.  Caldeira admitted that

18  the reason she and Baraki took these measures was because some parents might not want their children

19  to be participants in such a club.

20     60.      On information and belief, based on news reporting regarding the event, in the

21  workshop, Caldeira admitted that, because attendance at the Equality Club was down toward the end

22  of the 2019-2020 school year, in order to boost club attendance, she and Baraki "stalked what

23  [students] were doing on Google" when students were doing distance learning in an effort to identify

24  candidates for the club and to help them determine how best to coach students to pursue a new gender

25  identity, among other things.

26     61.      On information and belief, based on news reporting regarding the event, in the

27  workshop, Baraki admitted that she and Caldeira also used their "observations of kids in the

28

12

Complaint

1  classroom" to determine which students to invite to the Equality Club. Baraki admitted that students

2  often don't want to attend on their own and "need sort of a little bit of an invitation."

3      62.     On information and belief, based on news reporting regarding the event, in the

4  workshop, Caldeira admitted that she volunteered to run morning announcements at Buena Vista so

5  that she would be in a position to "control[s] the messaging." That way, she said, she could "control

6  the information that goes home."

7      63.     On information and belief, based on news reporting regarding the event, a recording

8  was made of Caldeira's and Baraki's presentation at the CTA conference.

9      64.     Or about November 18, 2021, news reports began being published regarding the CTA

10 Conference based, in part, on the recording. The news reports focused on Caldeira's and Baraki's

11 efforts to convince students to identify as homosexual, bisexual, transgender, gender non-conformists,

12 *etc.*, and to keep that information secret from parents.

13     65.     Plaintiffs do not have first-hand knowledge regarding the events of the CTA

14 conference. They base their allegations regarding the goings-on at the conference from the news

15 reports of that event that they have read.

16     66.     Ms. Konen and A.G. became aware of the news reports soon after they were published.

17 Since that time, Ms. Konen and her daughter have discussed Defendants' activities in coaching A.G.

18 to believe she was bisexual and transgender, efforts to convince A.G. to believe that Ms. Konen would

19 not be supportive of her, and efforts to conceal A.G.'s new gender identity, new name, use of pronouns,

20 and use of the unisex teachers' bathrooms, none of which Ms. Konen knew before. Further, based on

21 the news reports, A.G. has come to realize that Defendants pushed the new gender identity upon her

22 rather than the idea originating with her. Prior to reading these news reports, Plaintiffs did not know

23 these facts and were unable to learn them through the exercise of reasonable diligence.

24     67.     Plaintiffs' claims as set forth herein did not accrue until November 18, 2021, at the

25 earliest.

26                      **Ms. Konen's and A.G.'s Harm**

27     68.     Ms. Konen respects her daughter's life choices and is supportive of her, no matter what

28 those choices ultimately may be. Ms. Konen simply wants to be involved in A.G.'s life and assist her

13

Complaint

with those choices that have fundamental importance to the rest of her life, such as her gender identity, including, if necessary, seeking professional mental and spiritual health guidance and assistance to assist both A.G. and herself through the process. Defendants, however, deprived Ms. Konen of that right, foisting a new gender identity upon A.G. and concealing that fact from Ms. Konen, depriving her of her daughter's trust during a crucial phase of her development, causing great harm to her relationship with her daughter, and disrupting the integrity of her family.

69.    Defendants' acts have driven a wedge between Ms. Konen and her daughter, sending the message to A.G. that her mother cannot be trusted and does not support her, and Ms. Konen's relationship with her daughter has been seriously damaged because of Defendants' actions as set forth herein. By cutting Ms. Konen out of the decision-making process for A.G. on matters as intimate and consequential as gender identity, Defendants have caused Ms. Konen and A.G. to suffer severe emotional distress, mental anguish, psychological damage, and damage to their family dynamic of such a substantial or enduring quality that no reasonable person in a civilized society should be expected to endure it and reasonable people would be unable adequately to cope with it.

70.    Defendants caused Plaintiffs harm that will require separate counseling and healing. Both Ms. Konen and her daughter have sought guidance from their pastor in attempting to overcome the harm set forth herein, and they are likely to continue seeking such guidance in the future, among other potential mental health treatment.  In addition, A.G. has required professional care and treatment from medical providers, which Ms. Konen has been required to pay for, and she is likely to continue requiring such care and treatment in the future.

**Exhaustion of Claims Under the Government Claims Act**

71.    On January 19, 2022, Plaintiffs, through their undersigned counsel, presented a claim under the Government Claims Act to Spreckels Union based on the facts alleged herein.  The claim (1) was made on the claim form published by Spreckels Union pursuant to Gov't Code § 910.4; (2) complied or substantially complied as to form and content with Gov't Code §§ 910, 910.2, 910.4 and all other provisions of law; (3) was mailed, first class mail through the United States Post Office, to Spreckels Union at the address set forth on the claim form in compliance or substantial compliance with Gov't Code § 915(a)(2); and (4) was emailed to the email address of Spreckels Union's business

14

Complaint

1    manager, who was designated as the recipient on the Spreckels Union claim form. Plaintiffs thus

2    complied or substantially complied with all claim presentation requirements.

3         72.      Spreckels Union did not respond to the claim within the 45-day period set forth in Gov't

4    Code § 912.4(a) or the additional grace period set forth in Gov't Code § 915.2(b).

5         73.      Under Gov't Code § 912.4(c), Spreckels Union's failure to act on Plaintiffs claim

6    within the time period provided by law is deemed a rejection of the claim. Accordingly, the claim is

7    exhausted.

**CLAIMS**

**FIRST CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**(Substantive Due Process Right to Direct the Upbringing of One's Children)**

12         74.      Ms. Konen incorporates all allegations of this Complaint by reference as if set forth in

13    full herein.

14         75.      The Due Process Clause of the 14th Amendment to the United States Constitution

15    protects the fundamental rights of parents to direct the upbringing of their children; to make decisions

16    concerning the care, custody, and control of their children; to direct the medical and mental health

17    decision-making for their children; and to make private familial decisions regarding their children

18    without interference by the state, among other things.

19         76.      Defendants have infringed upon Ms. Konen's parental rights under the Due Process

20    Clause by, among other things: (1) manipulating A.G. into believing she was bisexual and that her

21    gender did not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s

22    assertion of a new gender identity and expression and adopting protocols aimed at secretively

23    affirming A.G's new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not

24    to tell her about the new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G.

25    by one name and pronouns in communications with her while referring to A.G. by a different name

26    and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-

27    being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the

28    ultimate decisionmaker regarding A.G.'s mental health and well-being, including decisions related to

15

Complaint

1    A.G.'s gender identity and expression and mental health; (6) impermissibly injecting themselves into

2    the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding

3    A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her

4    mother did not "support" her sufficiently to participate in decision-making related to her gender

5    identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was

6    acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to

7    adequately train and / or supervise Caldeira and Baraki in such a way that they were permitted to

8    commit the violations of law set forth herein despite knowing their dangerous proclivities and

9    deception of parents.

10       77.     Defendants have no compelling, significant, important, or legitimate interest that is

11   served by disregarding Ms. Konen's constitutional rights to direct the upbringing of her child.  Further,

12   Defendants' actions as alleged herein do not further any such interest, is not narrowly tailored to do

13   so, and is without any rational basis.

14       78.     Pagaran inadequately trained and /or supervised Caldeira and Baraki, knew of and

15   acquiesced to the constitutional deprivations alleged herein, and was deliberately indifferent to Ms.

16   Konen's parental rights.

17       79.      Ms. Konen has suffered severe or extreme emotional distress and monetary losses that

18   were actually and proximately caused by Defendants' conduct.

19       80.     Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of

20   Ms. Konen's rights, wanton, willful, malicious, and oppressive.

21                              **SECOND CAUSE OF ACTION**

22                   **CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS**

23                        **IN VIOLATION OF 42 U.S.C. § 1985(3)**

24       81.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

25       82.     Defendants formed and operated a conspiracy by agreeing to undertake a common plan

26   or design for the purpose of violating Ms. Konen's constitutional rights as alleged herein.   As

27   evidenced by the title of Caldeira and Baraki CTA Convention workshop, Defendants predicated their

28   policies and actions on the belief that parents with a conservative political or religious affiliation could

                                                16

Complaint

1    not be trusted with information about their children's change in gender identity and expression, a belief

2    that constitutions class-based, invidiously discriminatory animus.

3          83.    Defendants committed wrongful acts in furtherance of the conspiracy by, among other

4    things: (1) manipulating A.G. into believing she was bisexual and that her gender did not match her

5    biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender

6    identity and expression and adopting protocols aimed at secretively affirming A.G's new gender

7    identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new

8    gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and

9    pronouns in communications with her while referring to A.G. by a different name and pronouns

10    outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G.

11    and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decision

12    maker regarding A.G.'s mental health and well-being, including decisions related to A.G.'s gender

13    identity and expression and mental health; (6) impermissibly injecting themselves into the private

14    realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s

15    gender identity and expression and mental health and well-being; and (7) informing A.G. that her

16    mother did not "support" her sufficiently to participate in decision-making related to her gender

17    identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was

18    acting in her best interest and creating a rift in the parent-child relationship.

19          84.    Ms. Konen has suffered severe or extreme emotional distress and monetary losses that

20    were actually and proximately caused by Defendants' conduct.

21          85.    Defendants' actions as alleged herein, were grossly negligent, in reckless disregard of

22    Plaintiffs' rights, wanton, willful, malicious, and oppressive.

23    **THIRD CAUSE OF ACTION**

24    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS / GOV'T CODE § 815.2**

25          86.    Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

26          87.    Defendants have engaged in extreme and outrageous conduct with malice and the

27    intention of causing, or reckless disregard for the probability of causing, emotional distress upon

28    Plaintiffs. Specifically, Defendants engaged in extreme and outrageous conduct in the following ways,

17

among others: (1) manipulating A.G. into believing she was bisexual and that her gender did not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and expression and adopting protocols aimed at secretively affirming A.G's new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in communications with her while referring to A.G. by a different name and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker regarding A.G.'s mental health and well-being, including decisions related to A.G.'s gender identity and expression and mental health; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and / or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities and deception of parents.

88.     Plaintiffs have suffered severe or extreme emotional distress and monetary losses that were actually and proximately caused by Defendants' conduct.

89.     Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

## FOURTH CAUSE OF ACTION

### NEGLIGENCE / GOV'T CODE § 815.2

**(Negligence, Negligent Infliction of Emotional Distress, and Negligent Supervision)**

90.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

91.     As A.G.'s school, principal, and teachers, Defendants were in a special relationship with A.G.  This special relationship imposed upon Defendants the duty not to harm A.G. and to take

18

Complaint

1    all reasonable steps to protect her from foreseeable dangers, including, but not limited to, those created

2    by other Spreckels Union employees.

3          92.    Because Defendants engaged in a cover-up to conceal information from Ms. Konen

4    about A.G.'s new gender identity and expression and use of the teachers' restroom and because

5    Defendants should have foreseen that this concealment would cause Ms. Konen more emotional

6    distress than merely informing her of these facts in the first place, Defendants also were in a special

7    relationship with Ms. Konen.  As such, Defendants' deliberately usurped Ms. Konen's parental

8    prerogative to protect A.G., and Ms. Konen is thus a direct victim of Defendants' negligence.

9          93.    Defendants breached their duties to Plaintiffs by, among other things: (1) manipulating

10   A.G. into believing she was bisexual and that her gender did not match her biological sex; (2)

11   excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and

12   expression and adopting protocols aimed at secretively affirming A.G's new gender identity and

13   expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the new gender identity

14   and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in

15   communications with her while referring to A.G. by a different name and pronouns outside of her

16   presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking

17   to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker

18   regarding A.G.'s mental health and well-being, including decisions related to A.G.'s gender identity

19   and expression and mental health; (6) impermissibly injecting themselves into the private realm of

20   Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender

21   identity and expression and mental health and well-being; (7) informing A.G. that her mother did not

22   "support" her sufficiently to participate in decision-making related to her gender identity and

23   expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her

24   best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and

25   / or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of

26   law set forth herein despite knowing their dangerous proclivities and deception of parents.

27         94.    Plaintiffs have suffered severe or extreme emotional distress and monetary losses that

28   were actually and proximately caused by Defendants' conduct.

19

Complaint

95.     Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE *PER SE* / GOV'T CODE §§ 815.2 AND 815.6

### (Violation of Cal. Educ. Code § 51100, *et seq.*)

96.     Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

97.     Under Cal. Educ. Code § 51100, it is the public policy of this State that "parents . . . of school age children attending public schools [should be involved] in improving public education institutions" and that "involving parents . . . in the education process is fundamental to healthy system of public education."  Under Cal. Educ. Code § 51101(a)(9), (10) (12), Defendants owed Ms. Konen a duty to "inform[ her] of [A.G.'s] progress in school," to provide her access to A.G.'s "school records," to "inform[ her] . . . about school rules," and to allow her to "participate in [A.G.'s] education."

98.     These duties were designed to protect against the particular types of injuries alleged herein.

99.     Defendants breached these duties by, among other things: (1) failing to provide notice to Ms. Konen of the Parental Secrecy Policy; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of a new gender identity and expression and adopting protocols aimed at secretively affirming the new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her mother about her new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and pronouns in communications with her while referring to A.G. by a different name and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate decisionmaker regarding the mental health of A.G., including decisions related to A.G.'s gender identity and expression and mental health and well-being; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making

20

Complaint

1  related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about

2  whether Ms. Konen is acting in her best interest and creating a rift in the parent-child relationship; and

3  (8) failing to adequately train and / or supervise Caldeira and Baraki in such a way that they were

4  permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities

5  and deception of parents.

6      100.   Plaintiffs have suffered severe or extreme emotional distress and monetary losses that

7  were actually and proximately caused by Defendants' conduct.

8      101.   Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of

9  Plaintiffs' rights, wanton, willful, malicious, and oppressive.

10  **SIXTH CAUSE OF ACTION**

11  **VIOLATION OF BANE ACT / GOV'T CODE § 815.2**

12  **(Cal Civ. Code § 52.1(b))**

13      102.   Ms. Konen incorporates all allegations of this Complaint as if set forth in full herein.

14      103.   The Due Process Clause of the 14th Amendment to the United States Constitution

15  protects the fundamental rights of parents to direct the upbringing of their children; to make decisions

16  concerning the care, custody, and control of their children; to direct the medical and mental health

17  decision-making for their children; and to make private familial decisions regarding their children

18  without interference by the state, among other things.

19      104.   Defendants have infringed upon Ms. Konen's parental rights under the Due Process

20  Clause by, among other things: (1) manipulating A.G. into believing she was bisexual and that her

21  gender did not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s

22  assertion of a new gender identity and expression and adopting protocols aimed at secretively

23  affirming A.G's new gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not

24  to tell her about the new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G.

25  by one name and pronouns in communications with her while referring to A.G. by a different name

26  and pronouns outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-

27  being of A.G. and seeking to supplant their authority for Ms. Konen's authority as parent to be the

28  ultimate decisionmaker regarding A.G.'s mental health and well-being, including decisions related to

21

A.G.'s gender identity and expression and mental health; (6) impermissibly injecting themselves into the private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding A.G.'s gender identity and expression and mental health and well-being; (7) informing A.G. that her mother did not "support" her sufficiently to participate in decision-making related to her gender identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was acting in her best interest and creating a rift in the parent-child relationship; and (8) failing to adequately train and/or supervise Caldeira and Baraki in such a way that they were permitted to commit the violations of law set forth herein despite knowing their dangerous proclivities and deception of parents.

105.    Defendants have no compelling, significant, important, or legitimate interest that is served by disregarding Ms. Konen's constitutional rights to direct the upbringing of her child. Further, Defendants' actions as alleged herein do not further any such interest, is not narrowly tailored to do so, and is without any rational basis.

106.    Defendants accomplished or attempted to accomplish the infringement of Ms. Konen's rights under the Due Process Clause through coercion. Specifically, Caldeira and Baraki were A.G.'s teachers and, by imposition of their authority as such, their directive to A.G. to withhold information from her mother was unlawfully coercive in violation of the Bane Act.

107.    Plaintiffs have suffered severe or extreme emotional distress and monetary losses that were actually and proximately caused by Defendants' conduct.

108.    Defendants' actions, as alleged herein, were grossly negligent, in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

## SEVENTH CAUSE OF ACTION

## CIVIL CONSPIRACY

### (Against Caldeira, Baraki, and Pagaran)

109.    Plaintiffs incorporate all allegations of this Complaint as if set forth in full herein.

110.    Caldeira, Baraki, and Pagaran formed and operated a conspiracy by agreeing to a common plan or design to commit tortious acts as alleged herein.  Caldeira, Baraki, and Pagaran had

22

Complaint

1    actual knowledge that a tort was planned and concurred in the tortious scheme with knowledge of its

2    unlawful purpose.

3         111.     Caldeira, Baraki, and Pagaran committed wrongful acts in furtherance of the conspiracy

4    by, among other things: (1) manipulating A.G. into believing she was bisexual and that her gender did

5    not match her biological sex; (2) excluding Ms. Konen from discussions regarding A.G.'s assertion of

6    a new gender identity and expression and adopting protocols aimed at secretively affirming A.G's new

7    gender identity and expression; (3) deceiving Ms. Konen by instructing A.G. not to tell her about the

8    new gender identity and expression; (4) deceiving Ms. Konen by referring to A.G. by one name and

9    pronouns in communications with her while referring to A.G. by a different name and pronouns

10    outside of her presence; (5) usurping Ms. Konen's responsibility for the health and well-being of A.G.

11    and seeking to supplant their authority for Ms. Konen's authority as parent to be the ultimate

12    decisionmaker regarding A.G.'s mental health and well-being, including decisions related to A.G.'s

13    gender identity and expression and mental health; (6) impermissibly injecting themselves into the

14    private realm of Ms. Konen's family and usurping Ms. Konen's right to make decisions regarding

15    A.G.'s gender identity and expression and mental health and well-being; and (7) informing A.G. that

16    her mother did not "support" her sufficiently to participate in decision-making related to her gender

17    identity and expression, thereby sowing seeds of doubt in A.G.'s mind about whether Ms. Konen was

18    acting in her best interest and creating a rift in the parent-child relationship.

19         112.     Plaintiffs have suffered severe or extreme emotional distress and monetary losses that

20    were actually and proximately caused by Defendants' conduct.

21         113.     The actions of Caldeira, Baraki, and Pagaran, as alleged herein, were grossly negligent,

22    in reckless disregard of Plaintiffs' rights, wanton, willful, malicious, and oppressive.

23                               **PRAYER FOR RELIEF**

24         WHEREFORE, Plaintiffs pray this Court grant the relief requested herein, specifically that the

25    Court render the following judgment in Plaintiffs' favor and against Defendants:

26         i.        A declaration that Defendants violated Plaintiffs' rights as alleged herein;

27         ii.       Nominal, compensatory, treble, and punitive damages in an amount greater than

28    $25,000;

Complaint

iii.     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California Civil Code § 52.1(i), and California Code of Civil Procedure § 1021.5; and

iv.     Such other relief as the Court deems proper.


Date: June 14, 2022

DHILLON LAW GROUP INC.

By:

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

MARK E. TRAMMELL*
mtrammell@libertycenter.org
JOSHUA WALLACE DIXON*
jdixon@libertycenter.org
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
Telephone: (703) 687-6212
Facsimile: (517) 465-9683

*Pro hac vice motion forthcoming

Attorneys for Plaintiffs Jessica Konen and A.G., her minor child

24

Complaint

1

2                                      **DEMAND FOR JURY TRIAL**

3           Plaintiffs demand trial by jury in this action of all issues so triable.

4

5                                              DHILLON LAW GROUP INC.

6     Date: June 14, 2022

7                                   By:

8                                              HARMEET K. DHILLON (SBN: 207873)
                                               harmeet@dhillonlaw.com
9                                              DHILLON LAW GROUP INC.
                                               177 Post Street, Suite 700
10                                             San Francisco, California 94108
                                               Telephone: (415) 433-1700
11                                             Facsimile: (415) 520-6593

12                                             MARK E. TRAMMELL*
                                               mtrammell@libertycenter.org
13                                             JOSHUA WALLACE DIXON*
                                               jdixon@libertycenter.org
14                                             CENTER FOR AMERICAN LIBERTY
                                               1311 S. Main Street, Suite 302
15                                             Mount Airy, MD 21771
                                               Telephone: (703) 687-6212
16                                             Facsimile: (517) 465-9683
17

18                                             *Pro hac vice motion forthcoming

19                                             Attorneys for Plaintiffs Jessica Konen and A.G.,
                                               her minor child
20

21

22

23

24

25

26

27

28

                                              25

Complaint

# EXHIBIT A:2

# EXHIBIT A:2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Harneet K. Dhillon (SBN 207873)<br>Dhillon Law Group Inc., 177 Post Street, Suite 700, San Francisco, CA 94108<br>TELEPHONE NO.: 415-433-1700     FAX NO. *(Optional):*<br>E-MAIL ADDRESS: Harmeet@dhillonlaw.com<br>ATTORNEY FOR *(Name):* Plaintiffs Jessica Konen and A.G., her minor child | **ELECTRONICALLY FILED BY**<br>Superior Court of California,<br>County of Monterey<br>On 6/27/2022 2:20 PM<br>By: Rowena Esquerra, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey 93940
BRANCH NAME: Monterey Courthouse

CASE NAME:
Jessica Konen et al. v. Lori Caldeira et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 22CV001813 |
|---|---|---|---|---|
| [x] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[x] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation**
**(Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: June 14, 2022
Harneet K. Dhillon
_____
(TYPE OR PRINT NAME)
▶    *(signature)*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear
This Form button after you have printed the form.**

| Print this form | Save this form |

| Clear this form |

# EXHIBIT A:3

# EXHIBIT A:3

| SUPERIOR COURT OF MONTEREY COUNTY | |
|---|---|
| Monterey Branch, 1200 Aguajito Road, Monterey, CA 93940 | |
| Jessica Konen and A.G., her minor child vs. Lori Caldeira, et al. | **CASE NUMBER** 22CV001813 |
| | **Case Management Conference** |

## NOTICE OF ASSIGNMENT AND CASE MANAGEMENT CONFERENCE

Your case is assigned for all purposes to the Honorable Carrie M. Panetta.

Your civil case, excluding unlawful detainer and collections are a rotational assignment among three judicial officers:
Judge Thomas W. Wills; Judge Carrie M. Panetta, Judge Vanessa W. Vallarta

Your provisionally complex case or "is complex" designation at case initiation are assigned ODD/EVEN by ending number among two judicial officers:     Judge Thomas W. Wills and Judge Carrie M. Panetta

This notice, which includes the Alternative Dispute Resolution (ADR) information packet (CI-127), <u>must</u> be served together with the Summons and Complaint or Petition pursuant to California Rule of Court 3.221. *Parties are required to follow the complex case instructions, case management rules as outlined in California Rule of Court 3.722 and Chapter 6 of the Local Rules of Court, all can be found on the court website at* www.monterey.courts.ca.gov. A case management statement from each party or joint statement shall be filed prior to the conference as outlined in California Rule of Court 3.725.

---

**Date: <u>November 01, 2022</u>**     **Time:9:00 AM**_     **Department 14 \***

### Location: <u>Monterey Courthouse, 1200 AGUAJITO ROAD, MONTEREY, CA 93940</u>
\*If appearing remotely be sure and access the correct link:
Judge Thomas W. Wills – Dept. 15
Judge Carrie M. Panetta – Dept. 14
Judge Vanessa W. Vallarta - Dept. 13a
Information regarding remote appearance can be found at: https://www.monterey.courts.ca.gov/remote

---

COURT REPORTER INFORMATION

**Effective January 1, 2022,** Monterey County Superior Court will only be providing court reporter services in the following, statutorily-mandated case types:

1. Death penalty proceedings under Penal Code §190.9;
2. Juvenile proceedings not before a referee or commissioner under Welfare & Institutions Code §347 and §677;
3. Felony cases under Code of Civil Procedure §269; and
4. "Withdrawal of consent to adopt" proceedings under Family Code §9005.

---

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**     [Rev. June 2022]

**(Civil)**

For all other, non-statutorily-mandated cases, litigants who need court reporter services, and who are not entitled to a court-provided reporter due to indigency, will need to arrange for such services.

Pursuant to statutes of the State of California, it is the responsibility of the court to establish procedures for the timely and effective disposition of civil cases.

The court is charged with the responsibility of ensuring all parties a fair and timely resolution of their disputes, and the court is in the best position to establish neutral rules and policies without adversely affecting all parties' right to a fair trial. Effective management of the judicial system will build continuing respect by the community of government, minimize the costs to the parties and the public, and maximize the probability that cases will be timely resolved.

The goals of the Monterey County civil case and trial management system are:

1. To provide an effective and fair procedure for the timely disposition of civil cases;
2. To provide a mechanism to gather needed case information in order to make appropriate judicial management decisions; and
3. To establish reasonable rules and policies to require that cases reporting "ready" for trial may be tried without unnecessary delays or interruptions.

*Court proceedings are in English. If you or a witness in your case needs an interpreter, please complete Judicial Council form INT—300.* **You must file INT-300 at the first floor clerks counter (or by e-file) 15\* business days prior to your hearing.**

*Los procedimientos judiciales son en inglés. Si usted o un testigo en su caso necesita un intérprete, complete el formulario INT-300 del Consejo Judicial.* **Debe presentar el INT-300 con los empleados legales de la oficina del primer piso (o mediante archivo electrónico) 15\* días hábiles antes de su audiencia.**

---

### Alternative Dispute Resolution (CI-127) - (INFORMATION PACKET)
#### OPTIONS FOR RESOLVING YOUR DISPUTE

**There Are Alternatives to Going to Trial**

Did you know that 95 percent of all civil cases filed in court are resolved without going to trial? Many people use processes other than trial to resolve their disputes. These alternative processes, known as Alternative Dispute Resolution or ADR, are typically less formal and adversarial than trial, and many use a problem-solving approach to help the parties reach an agreement.

**Advantages of ADR**

Here are some potential advantages of using ADR:

- **Save Time:** A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.
- **Save Money:** When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, and expert's fees.
- **Increase Control over the Process and the Outcome:** In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

---

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**      [Rev. June 2022]

**(Civil)**

- **Preserve Relationships:** ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.
- **Increase Satisfaction:** In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.
- **Improve Attorney-Client Relationships:** Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

Because of these potential advantages, it is worth considering using ADR early in a lawsuit or even before you file a lawsuit.

## What Are the ADR Options?

The most commonly used ADR processes are mediation, arbitration, neutral evaluation, and settlement conferences.

### Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties. The Monterey County Superior Court offers a Court-Directed Mediation Program.

**Cases for Which Mediation May Be Appropriate:** Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use.

Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate:** Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

### Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed.

Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision in binding arbitration. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision. The Monterey County Superior Court offers a nonbinding judicial arbitration program.

**Cases for Which Arbitration May Be Appropriate:** Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate:** If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

### Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is nonbinding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

---

**NOTICE OF ALL PURPOSE CASE ASSIGNMENT**     [Rev. June 2022]

**(Civil)**

**Cases for Which Neutral Evaluation May Be Appropriate:** Neutral evaluation may be most appropriate in cases in which there are technical issues that require expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate:** Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conference**

Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set

# EXHIBIT A:4

# EXHIBIT A:4

HARMEET K. DHILLON (SBN: 207873)
harmeet@dhillonlaw.com
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700

MATTHEW M. HOESLY (SBN: 289593)
mhoesly@dhillonlaw.com
DHILLON LAW GROUP INC.
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660
Telephone: (949) 396-0608

MARK E. TRAMMELL (*pro hac vice* forthcoming)
mtrammell@libertycenter.org
JOSHUA WALLACE DIXON (*pro hac vice*
pending)
jdixon@libertycenter.org
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
Telephone: (703) 687-6212

*Attorneys for Plaintiffs Jessica Konen and A.G., her minor child*

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF MONTEREY

| | |
|---|---|
| **JESSICA KONEN and A.G., her minor child,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**LORI CALDEIRA, in her personal capacity; KELLY BARAKI, in her personal capacity; KATELYN PAGARAN, in her personal capacity; and SPRECKELS UNION SCHOOL DISTRICT,**<br><br>**Defendants.** | Case No.: 22CV001813<br><br>**PLAINTIFF A.G.'S NOTICE OF MOTION AND MOTION TO FILE UNDER SEAL**<br><br>Date: To be set by the Court<br>Time: 8:30 a.m.<br>Dept.: 14<br><br>Trial date: Not set |

1

Notice of Motion and Motion to File Under Seal                    Case No.: 22CV001813

**TO ALL PARTIES HEREIN AND THEIR ATTORNEY(S) OF RECORD:**

YOU ARE HEREBY NOTIFIED THAT on a date to be set by this Court at 8:30 a.m,. in Department 14 of this Court, located at located at 1200 Aguajito Road, Monterey California, 93940, a hearing will be held on Plaintiff' A.G.'s motion to seal pursuant to California Rules of Court, Rule 2.550 and 2.551.

Date: August 29, 2022                                      DHILLON LAW GROUP INC.

                                                          By:_____
                                                          Matthew M. Hoesly

                                                          *Attorney for Plaintiffs*

2

# EXHIBIT A:5

# EXHIBIT A:5

1   HARMEET K. DHILLON (SBN: 207873)
    harmeet@dhillonlaw.com
2   DHILLON LAW GROUP INC.
    177 Post Street, Suite 700
3   San Francisco, California 94108
    Telephone: (415) 433-1700
4

5   MATTHEW M. HOESLY (SBN: 289593)
    mhoesly@dhillonlaw.com
6   DHILLON LAW GROUP INC.
    2424 S.E. Bristol Street, Suite 300
7   Newport Beach, CA 92660
    Telephone: (949) 396-0608
8

9   MARK E. TRAMMELL*
    mtrammell@libertycenter.org
10  JOSHUA WALLACE DIXON (*pro hac vice* pending)
    jdixon@libertycenter.org
11  CENTER FOR AMERICAN LIBERTY
    1311 S. Main Street, Suite 302
12  Mount Airy, MD 21771
    Telephone: (703) 687-6212
13

14  *Pro hac vice* motion forthcoming
15

16  *Attorneys for Plaintiffs*

17              **SUPERIOR COURT OF CALIFORNIA**

18                 **COUNTY OF MONTEREY**
19

20  **JESSICA KONEN and A.G., her minor child,**      Case No.: 22CV001813

21              **Plaintiffs,**                       **MEMORANDUM OF POINTS AND**
                                                       **AUTHORITIES IN SUPPORT OF**
22              **v.**                                 **PLAINTIFF A.G.'s MOTION TO FILE**
                                                       **UNDER SEAL**
23
    **LORI CALDEIRA, in her personal capacity;**
24  **KELLY BARAKI, in her personal capacity;**        Hearing Date: To be set by the Court
    **KATELYN PAGARAN, in her personal**               Time: 8:30 a.m.
25  **capacity; and SPRECKELS UNION SCHOOL**           Dept.: 14
    **DISTRICT,**
26
27              **Defendants.**                        **Trial Date: Not set**

28



Points and Authorities In Support of Motion to File Under Seal      Case No.: 22CV001813

1   **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF A.G.'S**

2   **MOTION TO FILE UNDER SEAL**

3   **I.      STATEMENT OF FACTS**

4          Plaintiffs, A.G., a minor child, and her mother, Jessica Konen, filed this lawsuit on June 27,

5   2022. Plaintiffs allege, among other things, that Defendants, who were teachers and administrators at

6   A.G.'s middle school, unlawfully (1) convinced A.G. that she was a bisexual and a transgender male

7   and (2) concealed that information from A.G.'s mother. (*See, e.g.*, Compl. ¶¶ 9, 29, 30, 33-34, 44-47.)

8   Now that A.G. is in high school, and thus freed from Defendants' influence, she has re-adopted her

9   female gender identity, although she has suffered and continues to suffer emotional and psychological

10  trauma from Defendants' actions. (*Id.* ¶¶ 56, 69-70.)

11         Because A.G. is a minor child, for her to proceed in this litigation, a Guardian ad Litem

12  ("GAL") must be appointed. The Court's form Application and Order for Appointment of Guardian

13  ad Litem (Form CIV-010) ("GAL Application") requires disclosure of the name, address, telephone

14  number, birthdate, and signature of the minor child for whom the GAL is to be appointed. A.G. has

15  filed this action under a pseudonym, and, to protect her anonymity, A.G. now seeks an order

16  authorizing her to file the GAL Application under seal.

17         For the reasons discussed below, A.G. has an overriding interest in the privacy of her

18  sexuality, gender identity, and emotional and psychological harm; that overriding interest supports

19  sealing the GAL Application; that overriding interest will be prejudiced if the GAL Application is not

20  sealed; the proposed sealing is narrowly tailored; and no less restrictive means exist to achieve the

21  overriding interest.

22  **II.     LEGAL ARGUMENT**

23         "[T]rial courts may . . . seal particular documents to protect private information concerning an

24  overriding privacy interest." *In re Marriage of Nicholas*, (2010) 186 Cal. App. 4th 1566, 1568, 113

25  Cal. Rptr. 3d 629, 631. Under California Rules of Court Rule 2.550, the Court may order that a record

26  be filed under seal if:

27      1)  There exists an overriding interest that overcomes the right of public access to the record;

28      2)  The overriding interest supports sealing the record;

1

Points and Authorities in support of Motion to File Under Seal                    Case No.: 22CV001813

3)   A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed;

4)   The proposed sealing is narrowly tailored; and

5)   No less restrictive means exist to achieve the overriding interest.

Rule 2.550(d). Applying Rule 2.550 here, the Court should allow A.G. to file her GAL Application under seal, in whole or in part.[1]

*First*, A.G. has an overriding interest that overcomes the public's right of access to the GAL Application. The facts at issue in A.G.'s claims involve sensitive matters of a highly personal nature involving A.G.'s sexuality, gender identity and expression, and the psychological damage she suffered due to Defendants' actions. Courts routinely take measures to protect plaintiffs' identities in cases involving sensitive matters of a personal nature. *See J. D. v. Lackner* (Ct. App. 1978) 80 Cal. App. 3d 90, 92, 145 Cal. Rptr. 570, 570 (allowing plaintiff suffering from gender dysphoria to proceed anonymously); *Doe v. Blue Cross & Blue Shield of Rhode Island* (D.R.I. 1992) 794 F. Supp. 72, 72 (same); *see also Oiye v. Fox* (2012) 211 Cal. App. 4th 1036, 1068, 151 Cal. Rptr. 3d 65, 90 (noting that "psychological records" are the proper subject of sealing); *M.P. v. City of Sacramento* (2009) 177 Cal. App. 4th 121, 124, 98 Cal. Rptr. 3d 812, 814 (allowing plaintiff to proceed pseudonymously in case involving allegations of sexual assault); *Doe v. Sessions* (D.D.C. Sept. 27, 2018) No. 18-0004(RC), 2018 WL 4637014, *4 (allowing plaintiff to proceed pseudonymously when case involved sensitive medical issues). Protection of A.G.'s identity is particularly warranted here considering that A.G. was (and still is) a minor child at the time of the events in question. Courts take special care to protect the identity of parties "[w]here the issues involve matters of a sensitive and highly personal nature [and the] plaintiffs . . . are particularly vulnerable, such as children." *R.N. by & through R.T. v. Franklin Cmty. Sch. Corp.* (S.D. Ind. Sept. 11, 2019) No. 119CV01922MJDTWP, 2019 WL 4305748, at *3; *see also Doe v. Stegall* (5th Cir. 1981) 653 F.2d 180, 186 (noting the "special status and vulnerability of . . . child-litigants"); *S.S. as Next Friend of L.S. v. Napolitano* (D. Kan. Jan. 24, 2019)

---

[1] Rule 2.550 authorizes the Court to seal "documents," "pages" of documents, and, "if reasonably practicable, "portions of . . . documents and pages." Rule 2.550(e). A.G. requests that the entire GAL Application be sealed or, in the alternative, that all personally identifying information—name, address, telephone number, birthdate, and signature—be sealed.

2

DLG
DHILLON LAW GROUP INC.

1  No. 18-2491-CM, 2019 WL 316747, at *2 ("Courts grant heightened protection to child victims and

2  have concluded that complaints involving minors are matters of a highly sensitive and personal

3  nature."). The sensitive nature of A.G.'s allegations, when coupled with her youth, make this the

4  paradigmatic case for protecting her identity through sealing.

5      Moreover, A.G.'s claims—that she was unlawfully coached to assume a transgender identity

6  that was not her own and then instructed to conceal that identity from her mother—involve hot-button

7  political issues that are likely to engender a strong reaction of either support or opposition, the latter of

8  which could subject A.G. to unwarranted harassment. Allowing litigants to maintain their anonymity

9  is appropriate when the claim involves "a particularly sensitive topic that could subject [them] to

10  considerable harassment." *Doe v. Porter* (6th Cir. 2004) 70 F.3d 558, 560; *see also United States v.*

11  *Doe* (9th Cir. 1981) 655 F.2d 920, 922 n.1 (noting that protecting a litigant's identity is appropriate

12  "[w]here it is necessary . . . to protect a person from harassment, injury, ridicule or personal

13  embarrassment"); *Stegall*, 653 F.2d at 185–86 (anonymity warranted to protect minor plaintiffs

14  against risk of harassment from revelation of unpopular personal beliefs); *Doe v. Poelker* (8th Cir.

15  1975) 515 F.2d 541, 542, *rev'd on other grounds by* 432 U.S. 519 (1977) (granting pseudonymity to

16  protect the plaintiff's "true identity in order to avoid harassment due to the controversial nature of the

17  subject matter"). A.G. is a minor child, and, by her lawsuit, she is simply seeking to vindicate her

18  rights through the only means available to her. Allowing her to maintain her anonymity will mitigate

19  the substantial prejudice that A.G. might reasonably be expected to face given the nature of the claims

20  at issue and her highly sensitive and private information that would otherwise be exposed in this case.

21      Further, allowing A.G. to file her GAL Application under seal will not materially interfere

22  with the public's right to access to the courts, nor will it prejudice Defendants in any way. The

23  information at issue in the GAL Application is merely A.G.'s personally identifying information, such

24  as her name, address, and telephone number. By her motion, A.G. does not seek to keep secret any of

25  the underlying *facts* alleged in the Complaint, nor does she seek to close any of the Court's

26  proceedings. Instead, she seeks only to keep her *identity* out of the public eye. In such a situation,

27  sealing to preserve the plaintiff's anonymity is appropriate because it "will not interfere with the

28  public's right or ability to follow the proceedings." *Doe v. Provident Life & Acc. Ins. Co.* (E.D. Pa.

3

DIG

DHILLON LAW GROUP INC

1  1997) 176 F.R.D. 464, 468; *see also Doe v. Alger* (W.D. Va. 2016) 317 F.R.D. 37, 39 (noting that, if a

2  party is permitted to proceed anonymously, "the public is not denied its right to attend . . . proceedings

3  [in the case] or inspect the court's opinions and orders on the underlying . . . issue[s]"); *Freedom*

4  *From Religion Found., Inc. v. Connellsville Area Sch. Dist.* (W.D. Pa. May 24, 2013) No. 2:12-CV-

5  1406, 2013 WL 2296075, at *2 (observing that allowing plaintiff to proceed anonymously will not

6  "interfere with the public's right to follow the proceedings"). Further, Defendants will not be

7  prejudiced if the Court seals the GAL Application because they already know A.G.'s identity and, in

8  any event, the appointment of a GAL is a matter into which Defendants are likely to have little, if any,

9  input.

10     *Second*, A.G.'s overriding interest supports granting her leave to file her GAL Application

11  under seal. The GAL Application requires disclosure of personally identifying information of the

12  person for whom the GAL is to be appointed, including the person's name, address, telephone

13  number, birthdate, and signature of the minor child. Disclosure of this information would either

14  disclose A.G.'s identity or reveal sufficient information that her identity could be ascertained by the

15  public at large. Accordingly, A.G.'s overriding interest can only be served if she is permitted to file

16  the GAL Application under seal.

17     *Third*, a substantial probability exists that A.G.'s overriding interest in maintaining her

18  anonymity will be prejudiced if she is not permitted to file her GAL Application under seal. As noted,

19  the GAL Application contains personally identifying information, the disclosure of which would

20  either identify A.G. or allow her to be identified. Further, A.G.'s identity is not otherwise known in

21  the community. A.G.'s name has not been disclosed to the general public, nor does it appear in any

22  the media coverage regarding this case. While Defendants know A.G.'s identity, and other persons

23  with intimate knowledge of A.G. and her family may be able to determine her identity based on the

24  allegations in the Complaint, the relevant question is not whether *anyone* knows A.G.'s identity;

25  instead, the question is whether her "identity is *widely* [known] . . . amongst the general public." *Doe*

26  *v. Trustees of Dartmouth Coll.* (D.N.H. May 2, 2018) No. 18-CV-040-LM, 2018 WL 2048385, at *5.

27  Here, it is not. Moreover, once A.G.'s identity is revealed to the public, it cannot be protected through

28  any further Court orders. On these facts, A.G. has demonstrated that her overriding interest in

4

Points and Authorities in support of  Motion to File Under Seal          Case No.: 22CV001813

1    maintaining here anonymity would be prejudiced if she is not permitted to file her GAL

2    Application under seal.

3        **Fourth**, A.G.'s requested relief—sealing of the GAL Application—is narrowly

4    tailored to her overriding interest in privacy. At this time, A.G. seeks only to seal a single

5    document to remove personally identifying information. The information at issue is not

6    relevant to A.G.'s claims, nor would keeping the information secret impede the public's

7    understanding of A.G.'s claims or prejudice Defendants. Once a GAL is appointed, a

8    decision can be made as to whether any additional steps should be taken to keep A.G.'s

9    identity secret—such as requesting that she be permitted to proceed pseudonymously

10    throughout the case, moving for protective orders, moving to close the courtroom at

11    hearings, *etc.*—but, for now, A.G. seeks only the narrow relief of sealing the GAL

12    Application. This relief is thus narrowly tailored to serve her overriding interest in

13    privacy.

14        **Fifth**, and finally, there are no less restrictive means to sealing that would further

15    A.G.'s overriding interest. Once the GAL Application is filed, it will be accessible by the

16    public; thus, the only way to keep A.G.'s personally identifying information from entering

17    the public domain is to seal it. Indeed, allowing a plaintiff to proceed anonymously

18    through sealing is regularly invoked as a less restrictive means to more drastic measures,

19    such as complete closure of the proceedings. *See, e.g.*, *Hartford Courant Co., LLC v.*

20    *Carroll* (2d Cir. 2021) 474 F. Supp. 3d 483, 504 (D. Conn. 2020), *aff'd*, 986 F.3d 211

21    (noting that courts "commonly employ measures short of closing a courtroom or sealing

22    an entire court file, such as redactions and pseudonyms, to protect important privacy

23    interests"). On the facts here, there are no less restrictive means than sealing that would

24    adequately protect A.G.'s overriding interest in privacy.

25        In sum, all of the relevant factors counsel in favor of allowing A.G. to file the GAL

26    Application under seal.

27    //

28    //



Points and Authorities in support of Motion to File Under Seal      Case No.: 22CV001813

1    **III.    CONCLUSION**

2          For the foregoing reasons, A.G. respectfully requests that the Court grant this Motion and issue

3    an Order authorizing her to file the GAL Application under seal.

4

5

6                                                      Respectfully submitted,

7    Date: August 29, 2022                             DHILLON LAW GROUP INC.

8

9                                      By:    _____
10                                            Matthew M. Hoesly

11                                            *Attorney for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

Points and Authorities in support of Motion to File Under Seal          Case No.: 22CV001813



# EXHIBIT A:6

# EXHIBIT A:6

1   HARMEET K. DHILLON (SBN: 207873)
    harmeet@dhillonlaw.com
2   DHILLON LAW GROUP INC.
    177 Post Street, Suite 700
3   San Francisco, California 94108
    Telephone: (415) 433-1700
4
5   MATTHEW M. HOESLY (SBN: 289593)
    mhoesly@dhillonlaw.com
6   DHILLON LAW GROUP INC.
    2424 S.E. Bristol Street, Suite 300
7   Newport Beach, CA 92660
    Telephone: (949) 396-0608
8
9   MARK E. TRAMMELL*
    mtrammell@libertycenter.org
10  JOSHUA WALLACE DIXON (*pro hac vice*
11  pending)
    jdixon@libertycenter.org
12  CENTER FOR AMERICAN LIBERTY
    1311 S. Main Street, Suite 302
13  Mount Airy, MD 21771
    Telephone: (703) 687-6212
14
15  *Pro hac vice* motion forthcoming
16
    *Attorneys for Plaintiffs*
17
18              **SUPERIOR COURT OF CALIFORNIA**
19                **COUNTY OF MONTEREY**
20
21  **JESSICA KONEN and A.G., her minor child,**      Case No.: 22CV001813
22                 **Plaintiffs,**                    **DECLARATION OF MATTHEW
                                                      HOESLY IN SUPPORT OF PLAINTIFF**
23                  **v.**                            **A.G.'S MOTION TO SEAL**
24  **LORI CALDEIRA, in her personal capacity;**
    **KELLY BARAKI, in her personal capacity;**       **Hearing Date: To be Set by the Court**
25  **KATELYN PAGARAN, in her personal**              **Time: 8:30 a.m.**
    **capacity; and SPRECKELS UNION SCHOOL**          **Dept: 14**
26  **DISTRICT,**
27                 **Defendants.**                    **Trial Date: None set**
28

                                    1



Declaration of Matthew Hoesly                          Case No.: 22CV001813

I, Matthew Hoesly, declare and state as follows:

1.      I am an attorney at law admitted to practice law in the state of California and all federal courts in the state of California. I am an Attorney at Dhillon Law Group Inc. counsel of record for Plaintiffs Jessica Konen and A.G., her minor child, ("Plaintiffs") in this action. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2.      Plaintiffs filed this lawsuit on June 27, 2022. Plaintiffs allege, among other things, that Defendants, who were teachers and administrators at A.G.'s middle school, unlawfully (1) convinced A.G. that she was a bisexual and a transgender male and (2) concealed that information from A.G.'s mother. (See, e.g., Compl. ¶¶ 9, 29, 30, 33-34, 44-47.) Now that A.G. is in high school, and thus freed from Defendants' influence, she has re-adopted her female gender identity, although she has suffered and continues to suffer emotional and psychological trauma from Defendants' actions. (Id. ¶¶ 56, 69-70.)

3.      Because A.G. is a minor child, for her to proceed in this litigation, a Guardian ad Litem ("GAL") must be appointed. The Court's form Application and Order for Appointment of Guardian ad Litem (Form CIV-010) ("GAL Application") requires disclosure of the name, address, telephone number, birthdate, and signature of the minor child for whom the GAL is to be appointed. A.G. has filed this action under a pseudonym, and, to protect her anonymity, A.G. now seeks an order authorizing her to file the GAL Application under seal.

4.      For the reasons discussed in more detail in A.G.'s Motion to Seal and Memorandum of Points and Authorities in Support Thereof, A.G. has an overriding interest in the privacy of her sexuality, gender identity, and emotional and psychological harm; that overriding interest supports sealing the GAL Application; that overriding interest will be prejudiced if the GAL Application is not sealed; the proposed sealing is narrowly tailored; and no less restrictive means exist to achieve the overriding interest.

5.      The facts at issue in A.G.'s claims involve sensitive matters of a highly personal nature involving A.G.'s sexuality, gender identity and expression, and the psychological damage she suffered due to Defendants' actions.



2

Declaration of Matthew Hoesly

Case No.: 22CV001813

6.   A.G. was (and still is) a minor child at the time of the events in question.

7.   A.G.'s claims—that she was unlawfully coached to assume a transgender identity that was not her own and then instructed to conceal that identity from her mother—involve hot-button political issues that are likely to engender a strong reaction of either support or opposition, the latter of which could subject A.G. to unwarranted harassment. Allowing A.G. to maintain her anonymity will mitigate the substantial prejudice that A.G. might reasonably be expected to face given the nature of the claims at issue and her highly sensitive and private information that would otherwise be exposed in this case.

8.   Defendants are already aware of A.G.'s identity and, the appointment of a GAL is a matter into which Defendants are likely to have little, if any, input.

9.   The GAL Application requires disclosure of personally identifying information of the person for whom the GAL is to be appointed, including the person's name, address, telephone number, birthdate, and signature of the minor child. Disclosure of this information would either disclose A.G.'s identity or reveal sufficient information that her identity could be ascertained by the public at large.

10.   A.G.'s identity is not otherwise known in the community. A.G.'s name has not been disclosed to the general public, nor does it appear in any the media coverage regarding this case. Once the GAL Application is filed, it will be accessible by the public; thus, the only way to keep A.G.'s personally identifying information from entering the public domain is to seal it. Once A.G.'s identity is revealed to the public, it cannot be protected through any further Court orders.

11.   At this time, A.G. seeks only to seal a single document to remove personally identifying information. The information at issue is not relevant to A.G.'s claims, nor would keeping the information secret impede the public's understanding of A.G.'s claims or prejudice Defendants. Once a GAL is appointed, a decision can be made as to whether any additional steps should be taken to keep A.G.'s identity secret—such as requesting that she be permitted to proceed pseudonymously throughout the case, moving for protective orders, moving to close the courtroom at hearings, *etc.*— but, for now, A.G. seeks only the narrow relief of sealing the GAL Application.

//

3

1    I declare under penalty of perjury under the laws of the state of California that the foregoing is

2    true and correct.

3

4    Dated: August 29, 2022                    By: _____

5                                                  Matthew Hoesly

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

Declaration of Matthew Hoesly                              Case No.: 22CV001813



# EXHIBIT A:7

# EXHIBIT A:7

**[Exempt from payment of filing fees (Government Code § 6103)]**

LOUIS A. LEONE, ESQ. (*Of Counsel*) (SBN 099874)
BRIAN A. DUUS, ESQ. (SBN 263403)
JIMMIE E. JOHNSON, ESQ. (SBN 223344)
**LEONE ALBERTS & DUUS**
A Professional Corporation
1390 Willow Pass Road, Suite 700
Concord, CA 94520-7913
Telephone:    (925) 974-8600
Facsimile:    (925) 974-8601
Email: lleone@leonealberts.com
          bduus@leonealberts.com
          jjohnson@leonealberts.com

Attorneys for DEFENDANTS
SPRECKELS UNION SCHOOL DISTRICT
and KATELYN PAGARAN

ELECTRONICALLY FILED BY
Superior Court of California,
County of Monterey
On 9/8/2022 11:21 AM
By: Veronica Green, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

| | |
|---|---|
| JESSICA KONEN and A.G., her minor child,<br><br>    Plaintiffs,<br><br>    vs.<br><br>LORI CALDEIRA, in her personal capacity, KELLY BARAKI, in her personal capacity; KATELYN PAGARAN, in her personal capacity; and SPRECKELS UNION SCHOOL DISTRICT,<br><br>    Defendants. | Case No.:  **22CV001813**<br><br><br>**ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT**<br><br><br><br><br>Complaint Filed: June 27, 2022<br>Trial Date:  Not Yet Set |

Comes now DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT

("DISTRICT") and KATELYN PAGARAN ("PAGARAN")(collectively "DEFENDANTS")

1

to answer the Complaint of PLAINTIFFS JESSICA KONEN ("KONEN") and A.G., her minor child ("A.G.") (collectively "PLAINTIFFS"), on file herein, and DEFENDANTS admit, deny, and allege as follows:

<strong>GENERAL DENIAL</strong>

Under the provisions of Section 431.30(d) of the California Code of Civil Procedure, DEFENDANTS deny each and every, all and singular, generally and specifically, the allegations contained in said Complaint, and further deny that PLAINTIFFS have been damaged in any sum or sums, or at all, by reason of any act or omission on the part of these answering DEFENDANTS.

DEFENDANTS assert the following Affirmative Defenses and reserve the right to supplement the Affirmative Defenses in the course of this proceeding:

<strong><u>AFFIRMATIVE DEFENSES</u></strong>

<strong><u>FIRST AFFIRMATIVE DEFENSE</u></strong>

(Failure to State Claim)

1.     DEFENDANTS allege that PLAINTIFFS' Complaint fails to state facts sufficient to state a claim upon which relief can be granted.

<strong><u>SECOND AFFIRMATIVE DEFENSE</u></strong>

(Statute of Limitations)

2.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred by all applicable statutes of limitations including, but not limited to, Cal. Gov't Code §§ 911.2 and 945.6, and Cal. Code Civ. Proc. §§ 335, et seq., including Cal. Code Civ. Proc. § 335.1 as it relates to both federal and state causes of action.

<strong><u>THIRD AFFIRMATIVE DEFENSE</u></strong>

(Waiver and Estoppel)

3.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred by the doctrines of waiver and estoppel.

//

//

2

## FOURTH AFFIRMATIVE DEFENSE

(Laches)

4.    DEFENDANTS allege that PLAINTIFFS' Complaint is barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

(Negligent/Culpable Conduct of Others)

5.    DEFENDANTS allege that the injuries and damages sustained by PLAINTIFFS, if any, were caused in whole or in part by the negligent and/or culpable conduct of others, for which DEFENDANTS are not liable.

## SIXTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

6.    DEFENDANTS allege that PLAINTIFFS' Complaint is barred in whole or in part by PLAINTIFFS' failure to mitigate their damages.

## SEVENTH AFFIRMATIVE DEFENSE

(Governmental Immunities/Defenses)

7.    DEFENDANTS allege that PLAINTIFFS' Complaint is barred in whole or in part because all actions and conduct by DEFENDANTS and their agents or employees were justified and subject to governmental immunities and defenses, including but not limited to the immunities and defenses arising under the United States Constitution and federal law, immunities arising under the California Constitution and California law, immunities arising under Government Code Sections 810, *et seq.* including, but not limited to, Sections 815, 815.2, 818, 818.2, 818.8, 820.2, 820.4, 820.6, 820.8, 821.6, and 822.2.  This would include the discretionary immunity contained in Government Code Section 820.2 with respect to discretionary decisions with respect to policies, conduct and procedures of school operation.

//

//

//

3

## EIGHTH AFFIRMATIVE DEFENSE

(Lack of Standing)

8.     DEFENDANTS allege that PLAINTIFF JESSICA KONEN lacks legal standing and as such her claims are barred.

## NINTH AFFIRMATIVE DEFENSE

(Proposition 51)

9.     DEFENDANTS allege that the provisions of the Fair Responsibility Act of 1986 (commonly known as Proposition 51, Civil Code Sections 1430 – 1432) are applicable to this action to the extent that PLAINTIFFS' injuries and damages, if any, were legally caused or contributed to by the negligence or fault of persons or entities other than these DEFENDANTS. Such negligence or apportionment of fault does not include any such on the part of the minor plaintiff in this action.

## TENTH AFFIRMATIVE DEFENSE

(Failure to Comply with Claim Statute)

10.     DEFENDANTS allege that PLAINTIFFS' Complaint is barred by PLAINTIFFS' failure to comply with the California Tort Claims Act, Government Code section 905, *et seq.*, claims presentation requirements in that PLAINTIFFS failed to timely present a claim asserting all causes of action and/or all factual and legal bases for liability asserted in the Complaint, and/or failed to timely file suit following the denial of said claim.  Moreover, all causes of action, factual and/or legal allegations asserted in the Complaint that were not asserted in any claim presented by PLAINTIFFS are barred under the California Tort Claims Act.

## ELEVENTH AFFIRMATIVE DEFENSE

(No Punitive Damages)

11.     DEFENDANTS allege that as a public entity, the DISTRICT is immune from punitive damages pursuant to Government Code Section 818.

//

//

### TWELFTH AFFIRMATIVE DEFENSE

(Qualified Immunity)

12.   DEFENDANTS allege that PLAINTIFFS did not have any clearly established statutory or constitutional rights of which DEFENDANTS knew, or should have known, which required DEFENDANTS to act differently or to direct their subordinates to act differently, and therefore DEFENDANTS are immune from PLAINTIFFS' allegations, causes of action, and from liability under the doctrine of qualified immunity.

### THIRTEENTH AFFIRMATIVE DEFENSE

(No Constitutional Violation)

13.   DEFENDANTS allege that DEFENDANTS and their officers, agents or employees held a good faith and reasonable belief at all times in connection with the matters alleged herein that their actions and their subordinates' actions did not violate any established constitutional right.

### FOURTEENTH AFFIRMATIVE DEFENSE

(Lack of Jurisdiction)

14.   DEFENDANTS allege that PLAINTIFFS' Complaint is barred based on a lack of jurisdiction, and DEFENDANTS expressly reserve the right to challenge jurisdiction herein.

### FIFTEENTH AFFIRMATIVE DEFENSE

(DISTRICT is not a "Person" under 42 U.S.C §§ 1983 and 1985)

15.   DEFENDANT DISTRICT alleges that as a political subdivision of the State of California, it is not a "person" within the meaning of 42 U.S.C. §§ 1983 and 1985, and therefore the DISTRICT is not subject to suit under those statutes, thus the allegations to that effect in the Complaint are barred. Moreover, PLAINTIFFS' claims are barred by the 11th Amendment to the United States Constitution.

//

//

5

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

## SIXTEENTH AFFIRMATIVE DEFENSE

(Defenses unknown)

16.     DEFENDANTS presently have insufficient knowledge or information on which to form a belief as to whether they may have additional, as yet unstated, defenses available. DEFENDANTS reserve the right to assert additional defenses in the event discovery indicates that they would be appropriate.

### PRAYER FOR RELIEF

WHEREFORE, these answering DEFENDANTS pray that PLAINTIFFS take nothing by their Complaint and that these answering DEFENDANTS be dismissed with costs of suit incurred herein and for such other and further relief as the Court deems fit and proper.

Dated:  September 8, 2022

**LEONE ALBERTS & DUUS**

BRIAN A. DUUS, ESQ.
Attorneys for DEFENDANTS
SPRECKELS UNION SCHOOL DISTRICT and
KATELYN PAGARAN

6

**Re:**    <u>Jessica Konen, et al. v. Lori Caldeira, et al.</u>
Contra Costa County Superior Court Case No.:    C22-01336

<u>PROOF OF SERVICE</u>

I, the undersigned, declare that I am employed in the City of Concord, State of California.  I am over the age of 18 years and not a party to the within cause; my business address is 1390 Willow Pass Road, Suite 700, Concord, California.

On September 8, 2022, I served the following documents:

**ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT**

on the following interested party(s) in said cause:

**PLAINTIFFS' COUNSEL**
Harmeet K. Dhillon
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, CA 94108
T: 415.433.1700
F: 415.520.6593
E: harmeet@dhillonlaw.com

**PLAINTIFFS' COUNSEL**
Matthew M. Hoesley
DHILLON LAW GROUP, INC.
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660
T: 949.396.0608
E: mhoesly@dhillonlaw.com

**PLAINTIFFS' COUNSEL**
Mark E. Trammell
Joshua Wallace Dixon
CENTER FOR AMERICAN LIBERTY
1311 S. Main Street, Suite 302
Mount Airy, MD 21771
T: 703.687.6212
F: 517.465.9683
E: mtrammel@libertycenter.org
E: jdixon@libertycenter.org

7

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

**COUNSEL FOR KELLY BARAKI and**
**LORI CALDEIRA**
Mark E. Davis
DAVIS BENGSTON & YOUNG
1960 The Alameda, Suite 210
San Jose, CA 95126
T: 669.245.4200
F: 408.985.1814
E: mdavis@dby-law.com


**VIA MAIL - CCP §§ 1013(a), 2015.5**

☒    By placing a true copy thereof enclosed in a sealed envelope(s), addressed as above and placing each for collection and mailing on that date following ordinary business practices.  I am readily familiar with my firm's business practice of collection and processing of correspondence for mailing with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Concord, California, with postage thereon fully prepaid, that same day in the ordinary course of business.

**VIA ELECTRONIC MAIL TRANSMISSION - CCP §1010.6**

☒    By electronic transmission via email to the authorized electronic service address(es) given above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on September 8, 2022, at Concord, California.


_____
SYREETA SHOALS

8

ANSWER BY DEFENDANTS SPRECKELS UNION SCHOOL DISTRICT AND KATELYN PAGARAN TO PLAINTIFFS' COMPLAINT

# EXHIBIT A:8

# EXHIBIT A:8

.92147

MARK E. DAVIS—BAR NO. 79936
**DAVIS, BENGTSON & YOUNG, APLC**
1960 The Alameda, Suite 210
San Jose, CA 95126
Phone: 669.245.4200
Fax:    408.985.1814
Email:  mdavis@dby-law.com

No Filing Fee for a Public Entity
or its Employees (Gov't Code §6103)

Attorneys for Defendants
LORI CALDEIRA and KELLY BARAKI,
sued herein as employees of Spreckels
Union School District, a public entity

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF MONTEREY

| | |
|---|---|
| JESSICA KONEN and A.G., her minor child,<br><br>Plaintiffs,<br><br>vs.<br><br>LORI CALDEIRA, in her personal capacity; KELLY BARAKI, in her personal capacity; KATELYN PAGARAN, in her personal capacity; and SPRECKLES UNION SCHOOL DISTRICT,<br><br>Defendants. | Case No. 22CV001813<br><br>**ANSWER OF DEFENDANTS LORI CALDEIRA AND KELLY BARAKI TO COMPLAINT** |

COME NOW defendants LORI CALDEIRA AND KELLY BARAKI, sued herein as employees of Spreckels Union School District, and in Answer to Plaintiffs' Complaint, admit, deny and allege as follows:

Answering the allegations contained in each cause of action of said complaint, these answering defendants deny each and every, all and singular, generally and specifically, said allegations and the whole thereof and further specifically deny that plaintiffs were damaged in any sum or sums, or at all.

///

Answer of Defs. Lori Caldeira & Kelly Baraki to Complaint
{92147/00620666-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

.92147

1    AS AND FOR A SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO SAID

2  COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS ALLEGE:

3    That said complaint does not state facts sufficient to constitute a cause of action.

4    AS AND FOR A SECOND SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

5  TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

6  ALLEGE:

7    That the injuries and damages complained of by plaintiffs, if any there were, were

8  either wholly, or in part, directly and proximately caused by the negligence of persons or

9  entities other than this answering defendant including both parties and non-parties to this

10  action whether named or not named, and said negligence is either imputed to plaintiffs by

11  reason of the relationship between plaintiffs and said persons or entities, or comparatively

12  reduces the proportion of liability of these answering defendants.

13    AS AND FOR A THIRD SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

14  SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

15  ALLEGE:

16    That plaintiffs failed subsequent to the occurrence described in their complaint to

17  properly mitigate their alleged damages, if any, and is thereby precluded from recovering

18  those damages which could have otherwise been avoided.

19    AS AND FOR A FOURTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

20  TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

21  ALLEGE:

22    That these answering defendants assert any and all privileges and immunities

23  pursuant to Government Code sections 800, et seq.

24    AS AND FOR A FIFTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

25  SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

26  ALLEGE:

27    That defendants are immune from liability pursuant to Government Code section

28  815.2(b).

Answer of Defs. Lori Caldeira & Kelly Baraki to Complaint
{92147/00620666-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

.92147

1    AS AND FOR A SIXTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

2   SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF DEFENDANTS ALLEGE:

3    That defendants are immune from liability arising out of any discretionary act

4   pursuant to Government Code section 820.2.

5    AS AND FOR A SEVENTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

6   TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

7   ALLEGE:

8    Defendants are immune from liability pursuant to Government Code section 820.4.

9    AS AND FOR AN EIGHTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

10  TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

11  ALLEGE:

12    That defendants are immune from liability arising out of the act or omission of

13  another person pursuant to Government Code section 820.8.

14    AS AND FOR A NINTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

15  SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

16  ALLEGE:

17    Plaintiffs' claims are barred to the extent plaintiffs failed to comply with the California

18  Government Tort Claims Act based on Government Code section 900 et. seq.

19    AS AND FOR A TENTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE TO

20  SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

21  ALLEGE:

22    Plaintiffs' complaint against these answering defendants does not state a valid claim

23  for attorneys' fees.

24    AS AND FOR AN ELEVENTH SEPARATE AND DISTINCT AFFIRMATIVE

25  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

26  DEFENDANTS ALLEGE:

27    The action against defendants is barred by the doctrine of laches.

28    ///

-3-

Answer of Defs. Lori Caldeira & Kelly Baraki to Complaint
{92147/00620666-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

.92147

1        AS AND FOR A TWELFTH SEPARATE AND DISTINCT AFFIRMATIVE DEFENSE

2  TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF, DEFENDANTS

3  ALLEGE:

4        The action against defendants is barred by the doctrines of waiver and estoppel.

5        AS AND FOR A THIRTEENTH SEPARATE AND DISTINCT AFFIRMATIVE

6  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

7  DEFENDANTS ALLEGE:

8        Defendants are immune from liability pursuant to the Coverdell Teacher Protection

9  Act of 2011, 20 U.S.C. §6731 et. seq.

10        AS AND FOR A FOURTEENTH SEPARATE AND DISTINCT AFFIRMATIVE

11  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

12  DEFENDANTS ALLEGE:

13        Defendants allege that Plaintiff Jessica Konen lacks legal standing and as such her

14  claims are barred.

15        AS AND FOR A FIFTEENTH SEPARATE AND DISTINCT AFFIRMATIVE

16  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

17  DEFENDANTS ALLEGE:

18        Defendants allege that plaintiffs did not have any clearly established statutory or

19  constitutional rights of which defendants knew, or should have known, which required

20  defendants to act differently or to direct their subordinates to act differently, and therefore

21  defendants are immune from plaintiffs' allegations, causes of action, and from liability

22  under the doctrine of qualified immunity.

23        AS AND FOR A SIXTEENTH SEPARATE AND DISTINCT AFFIRMATIVE

24  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

25  DEFENDANTS ALLEGE:

26        That 42 U.S.C. section 1983 and section 1985 are not applicable to these

27  defendants.

28  ///

-4-

Answer of Defs. Lori Caldeira & Kelly Baraki to Complaint
{92147/00620666-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

.92147

1    AS AND FOR A SEVENTEENTH SEPARATE AND DISTINCT AFFIRMATIVE

2  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

3  DEFENDANTS ALLEGE:

4    Plaintiffs' claims are barred by the 11th Amendment to the United States

5  Constitution.

6    AS AND FOR AN EIGHTEENTH SEPARATE AND DISTINCT AFFIRMATIVE

7  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

8  DEFENDANTS ALLEGE   :

9    Defendants allege that defendants held a good faith and reasonable belief at all

10  times in connection with the matters alleged herein that their actions and their

11  subordinates' actions did not violate any established constitutional right.

12    AS AND FOR A NINETEENTH SEPARATE AND DISTINCT AFFIRMATIVE

13  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

14  DEFENDANTS ALLEGE:

15    Defendants allege that plaintiffs' complaint is barred based on a lack of jurisdiction

16  and defendants expressly reserve the right to challenge jurisdiction herein.

17    AS AND FOR A TWENTIETH SEPARATE AND DISTINCT AFFIRMATIVE

18  DEFENSE TO SAID COMPLAINT, AND EACH CAUSE OF ACTION THEREOF,

19  DEFENDANTS ALLEGE:

20    That defendant presently has insufficient knowledge or information on which to form

21  a belief as to whether it may have additional, yet unstated, affirmative defenses available.

22  This answering defendant reserves the right to assert additional affirmative defenses.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

-5-

Answer of Defs. Lori Caldelra & Kelly Baraki to Complaint
{92147/00620566-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

92147

1      WHEREFORE, said answering defendants pray for judgment against plaintiffs, for

2  costs of suit incurred herein, and for such other and further relief as the court may deem

3  just and proper.

4

5  DATED: 9 – 9 – 22

6                         DAVIS, BENGTSON & YOUNG, APLC

7

8                       By _____

9                         Mark E. Davis
                            Attorneys for Defendants

10                       LORI CALDEIRA and KELLY BARAKI

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer of Defs. Lori Caldeira & Kelly Baraki to Complaint
{92147/00620666-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

.92147

**PROOF OF SERVICE**

I, the undersigned, say:

I am a citizen of the United States.  My business address is 1960 The Alameda, Suite 210, San Jose, CA  95126.  I am employed in the County of Santa Clara, where this service occurs.  I am over the age of 18 years, and not a party to the within cause.  On the date set forth below, I served the attached document(s) described as follows:

**ANSWER OF DEFENDANTS LORI CALDEIRA AND KELLY BARAKI TO COMPLAINT**

on the following person(s) in this action by providing a true copy thereof, to the following:

| Attorney for Plaintiffs: | Attorney for Co-Defendant: |
|---|---|
| ARMEET K. DHILLON (SBN: 207873)<br>harmeet@dhillonlaw.com<br>DHILLON LAW GROUP INC.<br>177 Post Street, Suite 700<br>San Francisco, California 94108<br>Telephone: (415) 433-1700<br>Facsimile: (415) 520-6593<br><br>MARK E. TRAMMELL*<br>mtrammell@libertycenter.org<br>JOSHUA WALLACE DIXON*<br>jdixon@libertycenter.org<br>CENTER FOR AMERICAN LIBERTY<br>1311 S. Main Street, Suite 302<br>Mount Airy, MD 21771<br>Telephone: (703) 687-6212<br>Facsimile: (517) 465-9683 | Lou Leone<br>Leone, Albers & Duus<br>1390 Willow Pass Road, Suite 700<br>Concord CA  94520-7913<br>925-974-8600<br>lleone@leonealberts.com |

[ ] (BY MAIL) I am readily familiar with my firm's practice for collection and processing of correspondence for mailing with the United States Postal Service, to wit, that correspondence will be deposited with the United States Postal Service this same day in the ordinary course of business.  I sealed said envelope and placed it for collection and mailing on September 9, 2022, following ordinary business practices.

[ ] (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the office(s) of the addressee(s).

[ ] (BY FACSIMILE) I caused such document(s) to be delivered via facsimile this date to the office(s) of the addressee(s).

[ ] (BY OVERNIGHT MAIL) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

{92147/00614339-1}

Jessica Konen and A.G. v. Spreckles USD
22CV001813

.92147

1    [XX] (BY EMAIL OR ELECTRONIC TRANSMISSION) I caused the documents to be sent to the person(s) at the electronic service address(es) listed above.

2        I declare under penalty of perjury under the laws of the State of California that the foregoing

3    is true and correct and that this Declaration was executed on September 9, 2022.

4

5

6    _____
     Debbie Myers

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{92147/00614339-1}

# EXHIBIT A:9

# EXHIBIT A:9

EFS-020

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:                    STATE BAR NO.:<br>NAME: Matthew M. Hoesly (SBN: 289593)<br>FIRM NAME: Dhillon Law Group Inc.<br>STREET ADDRESS: 2424 S.E. Bristol Avenue, Suite 300<br>CITY: Newport Beach                    STATE: CA    ZIP CODE: 92660<br>TELEPHONE NO.: 415-433-1700                    FAX NO.:<br>E-MAIL ADDRESS: mhoesly@dhillonlaw.com<br>ATTORNEY FOR (name): Plaintiffs Jessica Konen and A.G., her minor child | FOR COURT USE ONLY |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Monterey<br>STREET ADDRESS: 1200 Aguajito Road<br>MAILING ADDRESS: 1200 Aguajito Road<br>CITY AND ZIP CODE: Monterey 93940<br>BRANCH NAME: Monterey Courthouse | |
| PLAINTIFF/PETITIONER: Jessica Konen, et al.<br>DEFENDANT/RESPONDENT: LORI CALDEIRA, in her personal capacity, et al.<br>OTHER: | CASE NUMBER:<br>22CV001813 |
| | JUDICIAL OFFICER:<br>Hon. Carrie M. Panetta |
| PROPOSED ORDER (COVER SHEET) | DEPT:<br>14 |

**NOTE:** This cover sheet is to be used to electronically file and submit to the court a proposed order. The proposed order sent electronically to the court must be in PDF format and must be attached to this cover sheet. In addition, a version of the proposed order in an editable word-processing format must be sent to the court at the same time as this cover sheet and the attached proposed order in PDF format are filed.

1. Name of the party submitting the proposed order:
   Plaintiff A.G.

2. Title of the proposed order:
   [PROPOSED] ORDER GRANTING PLAINTIFF A.G.'S MOTION TO FILE UNDER SEAL

3. The proceeding to which the proposed order relates is:
   a. Description of proceeding: Plaintiff A.G.'s Motion to File Under Seal
   b. Date and time: To be set by the Court
   c. Place: 1200 Aguajito Road, Monterey, CA 93940

4. The proposed order was served on the other parties in the case.

| | |
|---|---|
| Matthew M. Hoesly | ► _____ |
| _____ (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

Page 1 of 2

**PROPOSED ORDER (COVER SHEET)**
**(Electronic Filing)**

Cal. Rules of Court,
rules 2.252, 3.1312
www.courts.ca.gov

**EFS-020**

| CASE NAME: | CASE NUMBER: 22CV001813 |
|---|---|

### PROOF OF ELECTRONIC SERVICE
*PROPOSED ORDER*

1. I am at least 18 years old and **not a party to this action.**

   a. My residence or business address is *(specify):*
   177 Post Street, Suite 700, San Francisco CA 94108

   b. My electronic service address is *(specify):* htoschi@dhillonlaw.com

2. I electronically served the *Proposed Order (Cover Sheet)* with a proposed order in PDF format attached, and a proposed order in an editable word-processing format as follows:

   a. On *(name of person served) (If the person served is an attorney, the party or parties represented should also be stated.):*
   Mark E. Davis, Esq., Counsel for Defendants Lori Caldeira and Kelly Baraki
   Louise Leone, Esq., Counsel for Defendants Spreckels Union School District and Katelyn Pagaran

   b. To *(electronic service address of person served):*  MDavis@dby-law.com; lleone@leonealberts.com

   c. On *(date):* August 29, 2022

   ☐ Electronic service of the *Proposed Order (Cover Sheet)* with the attached proposed order in PDF format and service of the proposed order in an editable word-processing format on additional persons are described in an attachment.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 29, 2022

Holly Toschi
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(s                Holly Toschi                t)

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**   [ Print this form ]   [ Save this form ]     [ Clear this form ]

1  HARMEET K. DHILLON (SBN: 207873)
   harmeet@dhillonlaw.com
2  DHILLON LAW GROUP INC.
   177 Post Street, Suite 700
3  San Francisco, California 94108
   Telephone: (415) 433-1700
4
5  MATTHEW M. HOESLY (SBN: 289593)
   mhoesly@dhillonlaw.com
6  DHILLON LAW GROUP INC.
   2424 S.E. Bristol Street, Suite 300
7  Newport Beach, CA 92660
   Telephone: (949) 396-0608
8
9  MARK E. TRAMMELL (*pro hac vice* forthcoming)
   mtrammell@libertycenter.org
10 JOSHUA WALLACE DIXON (*pro hac vice* pending)
   jdixon@libertycenter.org
11 CENTER FOR AMERICAN LIBERTY
   1311 S. Main Street, Suite 302
12 Mount Airy, MD 21771
   Telephone: (703) 687-6212
13
14
15 *Attorneys for Plaintiffs*

16                    **SUPERIOR COURT OF CALIFORNIA**

17                         **COUNTY OF MONTEREY**

18

19 | **JESSICA KONEN and A.G., her minor child,** | Case No.: 22CV001813 |
   |---|---|
20 | **Plaintiffs,** | **[PROPOSED] ORDER GRANTING** |
21 | **v.** | **PLAINTIFF A.G.'S MOTION TO FILE UNDER SEAL** |
22 | **LORI CALDEIRA, in her personal capacity;** | |
23 | **KELLY BARAKI, in her personal capacity;** | |
   | **KATELYN PAGARAN, in her personal** | **Date: To be set by the Court** |
24 | **capacity; and SPRECKELS UNION SCHOOL** | **Time: 8:30 a.m.** |
   | **DISTRICT,** | **Dept.: 14** |
25 | | |
26 | **Defendants.** | **Trial date: Not set** |

27

28

                                    1



[Proposed] Order Granting A.G.'s Motion to File Under Seal          Case No.: 22CV001813

1    Plaintiff A.G.'s motion to seal came on for hearing before this Court on

2    _____ in Department 14 of the Superior Court of California, County of Monterey.

3    By this motion, Plaintiff A.G. seeks to seal her Application for Appointment of Guardian ad Litem

4    (the "GAL Application"). Having read and considered the motion, the memoranda of law, and

5    declaration of attorney Matthew Hoesly, and having heard argument of counsel and reviewed the

6    documents to be placed under seal, the Court finds as follows:

7        A.G., a minor, has an overriding interest in the privacy of information regarding her sexuality,

8    gender identity and expression, and emotional psychological harm. This interest supports sealing the

9    Application and Order for Appointment of Guardian ad Litem ("GAL Application") which contains

10   her name, address, telephone number, birthdate, and signature, information that either identifies A.G.

11   or could be used to identify her. A.G.'s interest in privacy will be prejudiced if the GAL Application

12   is not sealed. The proposed sealing is narrowly tailored, and no less restrictive means exist to achieve

13   A.G.'s overriding interest.

14       IT IS HEREBY ORDERED THAT Plaintiff A.G. is hereby granted leave to file the GAL

15   Application under seal.

16       SO ORDERED.

17

18   Date:

19                                             _____
                                               Hon. Carrie M. Panetta
20                                             Judge Superior Court of California, Monterey County

21

22

23

24

25

26

27

28

1



# EXHIBIT A:10

# EXHIBIT A:10

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY:          STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: Harmeet K. Dhillon (SBN 207873)/Matthew M. Hoesly (SBN 289593) | |

FIRM NAME: Dhillon Law Group Inc.
STREET ADDRESS: 177 Post Street, Suite 700
CITY: San Francisco                    STATE: CA    ZIP CODE: 94108
TELEPHONE NO.: 415-433-1700        FAX NO.: 415.520.6593
E-MAIL ADDRESS: Harmeet@Dhillonlaw.com
ATTORNEY FOR (Name): Plaintiffs Jessica Konen, and A.G., her minor child

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey 93940
BRANCH NAME: Monterey Courthouse

Plaintiff/Petitioner: JESSICA KONEN, et al.
Defendant/Respondent: LORI CALDEIRA, in her personal capacity, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>22CV001813 |
|---|---|

TO (insert name of party being served): Defendant KATELYN PAGARAN, in her personal capacity

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: August 15, 2022

Harmeet K. Dhillon
(TYPE OR PRINT NAME)

▶ *(signature)*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other (specify):

Complaint, Civil Case Cover Sheet, Notice of Assignment and Case Management Conference

**(To be completed by recipient):**

Date this form is signed: 8/22/2022

LOUIS A. LEONE
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ *(signature)*
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**For your protection and privacy, please press the Clear
This Form button after you have printed the form.**      [ Print this form ]   [ Save this form ]          [ Clear this form ]

# EXHIBIT A:11

# EXHIBIT A:11

POS-015

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**     STATE BAR NO: | | **FOR COURT USE ONLY** |

NAME: Harmeet K. Dhillon (SBN 207873)/Matthew M. Hoesly (SBN 289593)
FIRM NAME: Dhillon Law Group Inc.
STREET ADDRESS: 177 Post Street, Suite 700
CITY: San Francisco     STATE: CA     ZIP CODE: 94108
TELEPHONE NO.: 415-433-1700     FAX NO.: 415.520.6593
E-MAIL ADDRESS: Harmeet@Dhillonlaw.com
ATTORNEY FOR *(Name):* Plaintiffs Jessica Konen, and A.G., her minor child

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Monterey
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey 93940
BRANCH NAME: Monterey Courthouse

Plaintiff/Petitioner: JESSICA KONEN, et al.
Defendant/Respondent: LORI CALDEIRA, in her personal capacity, et al.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>22CV001813 |

TO *(insert name of party being served):* Defendant SPRECKELS UNION SCHOOL DISTRICT

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: August 15, 2022

Harmeet K. Dhillon
(TYPE OR PRINT NAME)

▶ *(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)*

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other *(specify):*

   Complaint, Civil Case Cover Sheet, Notice of Assignment and Case Management Conference

*(To be completed by recipient):*

Date this form is signed: 8/26/2022

Louis A. Leone
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]    [ Save this form ]    [ Clear this form ]